KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

ALEXANDER H. COTE (State Bar No. 211558)
acote@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Plaintiffs X.AI Corp. and X.AI LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X.AI Corp., a Nevada corporation, and X.AI LLC, a Nevada limited liability company,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>XUECHEN LI, an individual<br><br>　　　　　　Defendant. | Case No. _____<br><br>**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER PERMITTING EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF BRUCE APPLIN, ROBERTO RIVERA, JOSEPH POCHRON AND CARSON SWOPE IN SUPPORT THEREOF** |

---

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
Case No. _____

1

████████

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.    INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND .............................................................................. 3

    A.    xAI Is a Leading AI Company in a Fiercely Competitive Market ...................... 3

    B.    xAI's Confidential Information Drives Its Competitive Advantage ................... 3

    C.    xAI Takes Reasonable Measures to Protect Its Trade Secrets ............................ 4

    D.    Defendant Li Breached His Agreement and Certification with xAI by Stealing xAI's Confidential Information and Trade Secrets ................................................ 6

    E.    Li Agreed to the Relief xAI Now Seeks but Then Engaged in Subterfuge .......... 6

III.    THE COURT SHOULD GRANT THE TEMPORARY RESTRAINING ORDER ....... 9

    A.    Legal Standard .................................................................................................. 9

    B.    TRO Factor 1: xAI Is Likely To Prevail On The Merits .................................... 9

    C.    TRO Factor 2: xAI Will Suffer Irreparable Harm Absent Relief ...................... 13

    D.    TRO Factor 3: The Balance of Equities Weighs Heavily in Favor of Injunctive Relief ............................................................................................................... 15

    E.    TRO Factor 4: Granting The Temporary Restraining Order Is In The Public Interest .............................................................................................................. 16

    F.    Requested Relief .............................................................................................. 17

IV.    THE COURT SHOULD PERMIT EXPEDITED DISCOVERY ................................. 18

    A.    Expedited Discovery Is Necessary to Prevent Further Irreparable Harm to xAI 19

    B.    Additional Factors Favor Expedited Discovery Here ........................................ 19

V.    CONCLUSION ................................................................................................. 21

i

████████

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*,
  No. 94-cv-5620, 1994 WL 719696 (S.D.N.Y. Dec. 28, 1994) ................................21

*Albert S. Smyth Co. v. Motes*,
  No. CV CCB-17-677, 2018 WL 3635024 (D. Md. July 31, 2018) ........................10

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*,
  226 Cal. App. 4th 26 (2014) ................................10

*Ameriwood Indus., Inc. v. Liberman*,
  No. 06-cv-524, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006), *amended*, 2007 WL
  685623 (E.D. Mo. Feb. 23, 2007) ................................20

*Bank of Am., N.A. v. Immel*,
  No. C 10-02483 CRB, 2010 WL 2380877 (N.D. Cal. June 11, 2010) ..................16

*BarZ Adventures Inc. v. Patrick*,
  No. 4:20-CV-299, 2023 WL 2478550 (E.D. Tex. Mar. 13, 2023) ........................10

*Bodenburg v. Apple*,
  No. 24-3335, 2025 WL 2055748 ................................11

*Charles Schwab & Co. v. Newton*,
  No. 16-cv-00236, 2016 WL 1752767 (M.D. La. May 2, 2016) ........................20

*Comet Techs. U.S. of Am. Inc. v. Beuerman*,
  No. 18-CV-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ...................... *passim*

*Complete Logistical Servs., LLC v. Rulh*,
  350 F. Supp. 3d 512 (E.D. La. 2018) ................................10

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
  444 F. Supp. 3d 1198 (E.D. Cal. 2020) ................................16

*Doe v. San Diego Unified Sch. Dist.*,
  19 F.4th 1173 (9th Cir. 2021) ................................9

*DVD Copy Control Ass'n, Inc. v. Bunner*,
  31 Cal. 4th 864 (Aug. 25, 2003), *as modified*, (Oct. 15, 2003) ................................13

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ................................9

ii

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**

CASE NO. _____

*Edwards Lifesciences Corp. v. Launey*,
   2023 WL 4680774 (C.D. Cal. June 12, 2023) ..........................................................................13

*Google LLC v. Point Fin., Inc.*,
   No. 5:25-CV-04033-BLF, 2025 WL 1616533 (N.D. Cal. June 6, 2025) ...........................9, 13

*Henry Schein, Inc. v. Cook*,
   191 F. Supp. 3d 1072 (N.D. Cal. 2016) ...............................................................12, 14, 15, 16

*Imi-Tech Corp. v. Gagliani*,
   691 F. Supp. 214 (S.D. Cal. 1986) ........................................................................................15

*Implicit Conversions, Inc. v. Stine*,
   2024 WL 4112335 (N.D. Cal. Sept. 6, 2024) .......................................................................16

*Integral Dev. Corp. v. Tolat*,
   675 F. App'x 700 (9th Cir. 2017) .........................................................................................10

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) ..............................................................................................15

*Light Salt Invs., LP v. Fisher*,
   No. 13CV1158- MMA DHB, 2013 WL 3205918 (S.D. Cal. June 24, 2013) ..................20, 21

*Mechanix Wear LLC v. Branson*,
   No. 2:24-CV-03090-RGK-AJR, 2024 WL 2846068 (C.D. Cal. Apr. 23, 2024)..............13, 16

*Oasis W. Realty, LLC. v. Goldman*,
   51 Cal. 4th 811 (2011) ..........................................................................................................12

*OOO Brunswick Rail Mgmt., v. Sultanov*,
   No. 5:17-CV-00017-EJD, 2017 WL 67119 (N.D. Cal. Jan. 6, 2017)....................................14

*Posdata Co. v. Kim*,
   No. C-07-02504RMW, 2007 WL 1848661 (N.D. Cal. June 27, 2007)...................................11

*Pyro Spectaculars N., Inc. v. Souza*,
   861 F. Supp. 2d 1079 (E.D. Cal. 2012)..................................................................................13

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
   208 F.R.D. 273 (N.D. Cal. 2002)......................................................................................19, 20

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ...............................................................................................15

*Strike 3 Holdings, LLC v. Doe*,
   No. 24-CV-03852-PHK, 2024 WL 4445129 (N.D. Cal. Oct. 8, 2024) ............................19, 20

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**

CASE NO. _____

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ....................................................14

*Tesla Inc. v. Khatilov*,
    2021 WL 624174 (N.D. Cal. Jan. 22, 2021) .....................................12

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999) .......................................................13

*Wachovia Sec., LLC v. Stanton*,
    571 F. Supp. 2d 1014 (N.D. Iowa 2008) ........................................21

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) ....................................................9

*Waymo LLC v. Uber Techs.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017) ..........................10, 14, 16

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-EJD,
    2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ................................. *passim*

**Statutes**

18 U.S.C.A. § 1836(b)(1)..............................................................10

18 U.S.C. § 1831 et seq.......................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 26(d)(1).............................................................19

Fed. R. Civ. P. 26(f)...............................................................19

Fed. R. Civ. P. 65..................................................................1

*Removing Barriers to American Leadership in Artificial Intelligence*,
    Presidential Action, The White House, Jan. 23, 2025,
    https://www.whitehouse.gov/presidential-actions/2025/01/removing-barriers-to-
    american-leadership-in-artificial-intelligence/.......................................17

Local Rule 65-1....................................................................1

iv

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**

Case No. _____

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that as soon as the matter may be heard in a courtroom to be determined by the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs X.AI Corp. and X.AI LLC (collectively "Plaintiff" or "xAI") will, and hereby do, move pursuant to Rule 65 of the Federal Rules of Civil Procedure and Civil Local Rule 65-1 for:

1.    A Temporary Restraining Order against Defendant Xuechen Li ("Li" or "Defendant");

2.    An Order to Show Cause why a Preliminary Injunction should not issue; and

3.    An Order Permitting Expedited Discovery.

This Motion relates to the theft by one of xAI's first 20 engineers—Defendant Xuechen Li—of xAI's leading-edge, proprietary artificial intelligence ("AI") technology with the intent of joining xAI's staunch competitor OpenAI, Inc. Li's theft violates his Employee Confidential Information and Invention Assignment Agreement with xAI, his Termination Certification, and the Defend Trade Secrets Act ("DTSA"), and risks immediate and irreparable harm to xAI, which invested years of engineering effort and billions in financial investment developing its proprietary technology.

xAI respectfully requests that the Court **GRANT** xAI's Motion and **ORDER** the relief set forth in the Proposed Order Granting Plaintiffs' Motion for Temporary Restraining Order and Permitting Expedited Discovery and the Proposed Order to Show Cause re Preliminary Injunction.

Notice of this Motion has been provided pursuant to Local Rule 65-1 by emailing Defendant's counsel copies of this Motion, the Complaint, the Memorandum of Points and Authorities, the Declarations and exhibits, and the Proposed Order. *See* Decl. of Carson Swope in Support of Plaintiff's Motion for Temporary Restraining Order, Order to Show Cause, and Order Permitting Expedited Discovery, ¶ 2.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On July 25, 2025, after accepting an offer from artificial intelligence (AI) market leader and ChatGPT maker OpenAI, one of xAI's first 20 engineers—Defendant Xuechen Li—flagrantly breached his Employee Confidential Information and Invention Assignment Agreement (the "Agreement") and

1

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

1    Termination Certification with xAI, and violated the Defend Trade Secrets Act, by misappropriating ███

2    ██████ xAI's Confidential Information (defined in the Agreement to include xAI's most sensitive trade

3    secrets)—including ██████████████████ and cutting-edge AI technologies with features

4    superior to those offered by ChatGPT and other competing products. Applin Decl. at ¶¶ 12, 22, 31;

5    Pochron Decl. at ¶¶ 6, 7. The misappropriated data—which Li ████████████████████████

6    account—is ████████████████████████████████████████████

7    █████████████████████████████████. Applin Decl. at ¶ 13. It could be

8    weaponized by competitors such as OpenAI to, at a minimum, improve competing products such as

9    ChatGPT by incorporating Grok's unique and more advanced features, (for example, in areas where Grok

10    exceeds ChatGPT in industry benchmarks), undermine xAI's product roadmap, and disrupt its market

11    expansion strategy. It could save OpenAI and other competitors billions in R&D dollars and years of

12    engineering effort, handing any competitor a potential overwhelming edge in the race to dominate the AI

13    landscape. *Id*. **Critically, Li's guilt is not in dispute, because Li, with his attorney present, admitted in a**

14    **handwritten document he provided to xAI that he misappropriated xAI's Confidential Information and**

15    **trade secrets, and again, with his attorney present, admitted verbally during in-person meetings with**

16    **xAI that he engaged in such misappropriation and further admitted that he tried to hide his theft**. Applin

17    Decl. at ¶ 22; *id*. Ex. G. He also admitted to understanding the gravity of his actions. *Id*.

18        Li's admitted theft is enough alone to warrant the full extent of the requested relief. But there is

19    more. First, **by signing the Agreement, Li acknowledged his conduct is causing xAI immediate and**

20    **irreparable damage entitling xAI to injunctive relief.** Applin Decl. Ex. B, ¶ 9.

21        Second, after xAI discovered Li's theft and immediately demanded remediation, Li engaged in

22    efforts to obstruct xAI's access to the accounts. To forestall legal action, **Li agreed in writing to the very**

23    **relief xAI now seeks,** most importantly agreeing to allow xAI to conduct a forensic analysis of Li's ████

24    and other accounts and devices to find and destroy xAI's Confidential Information. Applin Decl. Ex. E.

25    But Li then violated that agreement by failing to give xAI access to the accounts, conveniently "forgetting"

26    the password to a key online account xAI identified as containing its Confidential Information (which

27    password Li had changed only seven days earlier) and failing to disclose the existence of other accounts

28

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

entirely. Applin Decl. at ¶ 28. To date, Li has yet to give xAI the access it needs to protect its interests.

Third, ***Li is a flight risk and any delay in justice could effectively amount to a denial***. Li has both a Chinese passport and permanent residency in Canada, and could easily travel beyond this Court's reach. Applin Decl. at ¶¶ 8, 24. And this is no idle speculation—an investigator hired by xAI observed Li leaving his residence with luggage, driving alone with that luggage to the airport, not picking anyone up, and sitting in the parking lot for approximately 45 minutes. Rivera Decl. at ¶ 2. The investigator also observed Li staying in a hotel close to the airport and traveling with luggage. *Id*. at ¶¶ 3-8. And, after selling nearly $7 million of his xAI company stock, Li also has the financial means to flee. Applin Decl. at ¶ 11.

xAI seeks immediate Court action enforcing the Agreement, finding a violation of the DTSA and granting xAI the relief to which xAI is entitled under the Agreement and the DTSA (i.e., forensic imaging, and deletion of stolen information) and in equity (i.e., forbidding Li from working on his new employer's generative AI, including ChatGPT). Immediate Court action is necessary to protect xAI's confidential and proprietary information from further improper use and/or dissemination, as the Agreement, the DTSA, and equity demand. Pochron Decl. at ¶ 27.

## II.    FACTUAL BACKGROUND

### A.    xAI Is a Leading AI Company in a Fiercely Competitive Market

xAI is a leading artificial intelligence company founded in 2023 to advance human comprehension and capabilities through its Grok large language models (LLMs) and other advanced AI. Compl., at ¶ 8; Applin Decl. at ¶ 3. xAI's Grok is a preeminent frontier model, representing the cutting edge of AI research and development and pushing the boundaries of what AI can do across multiple domains. Applin Decl. at ¶ 3. Competing alongside OpenAI's ChatGPT, Google's Gemini and China's DeepSeek, Grok's newest release—Grok 4—is one of the most, if not the most, advanced and powerful generative AI systems in the world, leading industry benchmarks in reasoning and pretraining capabilities. *Id*.

### B.    xAI's Confidential Information Drives Its Competitive Advantage

xAI entered the AI market a year after OpenAI launched ChatGPT in November 2022. *Id*. Because of xAI's extraordinary investment in its innovation, it has been able to deliver the world's most advanced AI model in just two years, leading industry benchmarks in reasoning and pretraining capabilities. xAI

3

has been able to offer more innovative and imaginative features than ChatGPT. While traditional technologies that shaped Silicon Valley, such as semiconductors and mobile devices, are best safeguarded through patents, the most valuable and sensitive components of modern AI demand broader and more adaptable trade secret protection. Trade secrets protect xAI's innovation and intellectual property, including its model weights, training data, tuning methods, system prompts, know-how, and more. *Id.*

### C.     xAI Takes Reasonable Measures to Protect Its Trade Secrets

Because xAI's protection of its Confidential Information is paramount to maintaining its competitive edge in the hyper-competitive AI industry, xAI has implemented a variety of industry-leading practices to maintain secrecy, such as: routinely conducting security awareness training for all employees; conducting background checks on employees and contractors who may access xAI data; conducting secure development and data handling training for employees with access to sensitive data, after which such employees must complete an assessment to demonstrate understanding; employing a team dedicated to information security; adopting the NIST 800-171 Rev.3 framework as a baseline for internal security standards; achieving SOC 2, Type II compliance; securing endpoints, including employee devices, with ongoing patch maintenance and full disk encryption; and maintaining a formal written information security policy, among other practices. Applin Decl. at ¶ 4.

In addition, xAI requires employees to enter into the Agreement, which imposes clear obligations to protect xAI's Confidential Information[1] (*id.* at ¶ 5), including that each employee:

- Acknowledges that their employment "creates a relationship of confidence and trust" with respect to xAI's Confidential Information, which xAI "has a protectable interest therein" (Applin Decl. Ex. B ¶ 1.1);

---

[1] The Agreement defines "Confidential Information" to mean "any and all confidential knowledge, data or information" belonging to xAI, including as relevant here: (a) trade secrets, proprietary technology, inventions, mask works, ideas, processes, formulas, software in source or object code, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques, and any other work product of any nature and all Intellectual Property Rights (as defined below) therein (collectively, "Inventions"), including all Company Inventions (as defined below); [and] (g) any other non-public information that a competitor of Company could use to Company's competitive disadvantage. Applin Decl. Ex. B ¶ 1.2.

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

- Is required to maintain confidentiality "during and after [the employee's] employment," and prohibits disclosure, use, or publication of Confidential Information unless required for the employee's work or expressly authorized by an officer of xAI (*id.*);

- Is required, upon termination, to return "any and all" materials containing or disclosing Confidential Information, including documents, notes, and devices, along with all copies, and "any other material containing or disclosing . . . Confidential Information" (*id.*, ¶ 8);

- Is required to provide xAI with a computer-usable copy of any Confidential Information stored on personal devices or systems and to "permanently delete and expunge" such information (*id.*);

- Is required to "agree to provide [xAI] access to [the employee's] system as reasonably requested to verify that the necessary copying and/or deletion is completed" (*id.*); and

- Is required to "agree to: (a) provide [xAI] any and all information needed to access any [xAI] property or information returned or required to be returned . . . , including without limitation any login, password, and account information." *Id.*

Each employee agrees that "any threatened or actual violation" of the Agreement would "constitute immediate and irreparable injury" to xAI. *Id.* ¶ 9. Each employee also agrees that xAI may remedy those violations with injunctive, specific performance or equitable relief without bond. *Id.*

When an employee resigns, as Li did, xAI requires that the employee sign a Termination Certification verifying that they have complied with the Agreement. Applin Decl. at ¶ 6, Ex. B at 1. The Certification also requires departing employees to certify that they have undertaken a diligent search for all xAI documents and returned them to the company. Applin Decl. Ex. B at 1. It provides that "if [the employee has] used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any … Confidential Information, [the employee] agree[s] to provide Company with a computer-useable copy of all such Confidential Information and then permanently delete and expunge such Confidential Information from those systems." *Id.* To ensure compliance, the Certification requires the employee to "agree to provide [xAI] access to [the employee's] system as reasonably requested to verify that the necessary copying and/or deletion is completed." *Id.*

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

**D.    Defendant Li Breached His Agreement and Certification with xAI by Stealing xAI's**
**Confidential Information and Trade Secrets**

Li began working for xAI as a Member of the Technical Staff on or about February 26, 2024 and, as a condition of employment, signed the Agreement on February 26, 2024. *Id.* at ¶ 9. As one of the company's initial group of approximately 20 engineers, Li was responsible for developing and training Grok, xAI's advanced AI model. *Id.* at ¶ 10. In this role, Defendant had access to and responsibility for components across the entirety of xAI's technology stack. *Id.* To support his job responsibilities, xAI entrusted Li with restricted and controlled access to confidential documents and proprietary information, including ███████████████████████████████████████████████ ████████████. *Id.*

xAI awarded stock options and shares to Li as part of his compensation. *Id.* at ¶ 11. In the days leading up to his misappropriation of xAI's confidential and trade secret information, Li began liquidating his equity, selling approximately $4.7 million of xAI stock on July 23, 2025, and $2.2 million two days later. All told, Li sold almost $7 million in xAI stock through July 25, 2025. *Id.*

That same day—and three days before he announced his resignation—Li exploited xAI's trust by surreptitiously copying ████████████████████████████████████ ████████, from his company-issued laptop to a ███████████████ account. *Id.* at ¶ 12. This misappropriated data included Confidential Information and trade secrets with independent economic value in the AI market. *Id.* at ¶ 13. The stolen data is ████████████████████████ ██████████████████████████. *Id.* The misappropriated data could be used by competitors to preempt xAI's product offerings and market expansion efforts. *Id.* It is sufficient to give any competitor a competitive advantage in the AI race, potentially saving them billions of dollars and years of development time. *Id.*

**E.    Li Agreed to the Relief xAI Now Seeks but Then Engaged in Subterfuge**

Li took extensive measures to conceal his misconduct. He deleted his browser history and system logs, renamed files, compressed them, and appended files together, prior to uploading xAI's Confidential Information to his personal, non-work ███████████. *Id.* at ¶16; Pochron Decl. at ¶ 25. xAI discovered

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

Li's theft on August 11, 2025 during a routine review of logs from security software designed to detect and prevent data exfiltration. Applin Decl. at ¶ 16. On that date, xAI sent a demand letter to Li, requiring him to return and delete the stolen data by August 13. *Id.* at 17, Ex. D. The letter also requested a detailed accounting of any disclosures or unauthorized use. *Id.* Ex. D at 1.

Since xAI discovered his theft, Li has been stringing xAI along. He sent his lawyer to talk to xAI while simultaneously changing his passwords and going to the San Jose airport with his luggage. Applin Decl. at ¶ 20 (attorney contact on August 13); Rivera Decl. at ¶ 2 (travel to airport on August 13), Pochron Decl. ¶¶ 10, 11 (password changed August 11/12). Li retained criminal defense counsel and engaged in subterfuge. Li also moved to a hotel near the airport with his luggage. *Id.* at ¶¶ 2-7.

After xAI sent a demand letter to Li, Li and his attorney met with xAI twice. Applin Decl. at ¶ 21. During the meetings, Li left three devices as a supposed "showing of good faith," but did not provide the passwords necessary to access the devices. Applin Decl. at ¶ 25; Pochron Decl. at ¶¶ 8, 9. Also during the meetings, Li admitted, in his own handwriting and verbally, to intentionally taking xAI's files and covering his tracks. Applin Decl. at ¶22; *id.* Ex. G. Li also admitted to signing a job offer with another employer prior to his resignation from xAI, but Li refused to identify the employer. *Id.* at ¶ 23. Subsequently, xAI discovered Li had accepted an offer with OpenAI, one of xAI's main competitors. *See* Pochron Decl. at ¶¶ 18-23.[2]

After four days of negotiations, Li entered into a contract with xAI entitled Authorization for Access to Accounts and Personal Devices ("Authorization"), authorizing, and supposedly granting, access to his ███████ account and other devices and accounts. Applin Decl. at ¶ 26; *Id.* Ex. E. Li authorized this access to allow xAI to (among other things): search the devices and accounts for the misappropriated Confidential Information and delete any Confidential Information that it found. Applin Decl. Ex. E ¶¶ 2.b. 2.e.

Li promised in the Authorization to provide the passwords necessary to access Li's accounts and devices and handwrote into the Authorization *some* passwords, but he omitted some critical ones.

---

[2] Li's counsel has represented that he has postponed his start date at OpenAI. Applin Decl. at ¶ 23.

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

including in particular the password for the ███ account to which Li had uploaded xAI's ████ ████. Applin Decl. Ex. E ¶2.d; Pochron Decl. at ¶¶ 8, 9. Li later represented through his lawyer that he did not remember the password for that ███ account, but that xAI could access the account through one of two laptops Li surrendered to xAI. Applin Decl. Ex. F; Pochron Decl. at ¶¶ 13, 24. xAI's forensic expert was unable to determine any such method of access. Pochron Decl. at ¶¶ 13, 14, 24. xAI's forensic expert did find on the password manager on Li's phone a password—last updated as of August 12, 2025—to access the ███ account, but when he tried it, it did not work. Pochron Decl. at ¶¶ 11, 12. What's more, digital artifacts discovered by the forensic expert indicated that the password for the ███ account had been changed on ***August 11, 2025***, the *same day* xAI sent its original demand letter to Li. *Compare id. with* Pochron Decl. at ¶ 10. Li's surreptitious alteration of his ███ password on August 11 cannot be reconciled with his attorney's representation on August 18, only seven days later, that he "does not recall" the password. Worse, even though Li's iPhone reflected that the stored password associated with his ███ account was last updated on August 12, that password *still* failed to provide access to Li's account, which suggests that Li either changed the password ***again*** after August 11 or stored a fake password on his phone on August 12 to conceal the true password. Pochron Decl. at ¶¶ 12, 15, 16. Moreover, a forensic review of Li's phone revealed that Li also had another ███ account, a ████ account with xAI information, including potentially Confidential Information, and a ███ account, all of which Li failed to disclose, let alone provide access to, as required. Pochron Decl. at ¶ 17. When confronted, Li's counsel informed xAI's counsel that Li had "forgotten" the password to these accounts as well.

In short, Li only feigned granting access to his accounts. Despite the appearance of cooperation, Li's false representations and covert activity concerning the ███ accounts' and ███ account's passwords have deprived xAI of any actual access to those accounts. Thus, the data Li stole remains outside xAI's control. Applin Decl. at ¶¶ 28, 29; Pochron Decl. at ¶ 26. Li has continued to act suspiciously by keeping his luggage with him and staying at a hotel near the airport. Rivera Decl. at ¶¶ 3-8. And, he has the means to flee this Court's jurisdiction, given the financial resources gained from his stock sale. Also, Li is a Chinese national with a passport issued by the People's Republic of China. Applin Decl. at ¶

8, Ex. A. He also claims to be a permanent resident of Canada, and has traveled to Canada at least once in the last year. *Id.* at ¶ 24. xAI has suffered irreparable harm, and will continue to suffer that harm unless Li is enjoined.

## III.     THE COURT SHOULD GRANT THE TEMPORARY RESTRAINING ORDER

### A.     Legal Standard

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Google LLC v. Point Fin., Inc.*, No. 5:25-CV-04033-BLF, 2025 WL 1616533, at *2 (N.D. Cal. June 6, 2025) (citing *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017)). "A plaintiff seeking a preliminary injunction must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 (9th Cir. 2021) (citation omitted). A "TRO should be restricted to preserving the status quo and preventing irreparable harm just so long as is necessary to hold a preliminary injunction hearing and no longer." *Google LLC*, 2025 WL 1616533, at *2 (cleaned up, citing *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018)). The Ninth Circuit applies a "sliding scale" approach to preliminary injunctions, granting preliminary relief even if serious questions as to the merits are raised, so long as the balance of hardships tips sharply in the plaintiff's favor. *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021).

### B.     TRO Factor 1: xAI Is Likely To Prevail On The Merits

xAI is likely to succeed on the merits on two causes of action relevant here: (1) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq., and (2) breach of contract.

The DTSA requires "a plaintiff to show that it possessed a trade secret, that the defendant misappropriated the trade secret, and that the defendant's conduct damaged the plaintiff." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019). As defined in the DTSA, misappropriation means the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or

9

1    implied consent by a person who … used improper means to acquire knowledge of the trade secret," while

2    "improper means" includes "theft," "misrepresentation," and "breach of a duty to maintain secrecy." 18

3    U.S.C. § 1839(5)-(6).

4            In *Waymo LLC v. Uber Techs., Inc.*, the court found a likelihood of success on the merits where a

5    company provided "compelling" evidence that an employee had "pilfered over 14,000 files" along with

6    an initial showing that "at least some" of the stolen information "likely qualifies for trade secret

7    protection[.]" No. C 17-00939 WHA, 2017 WL 2123560, at *7-10 (N.D. Cal. May 15, 2017). Here, as in

8    *Waymo*, xAI has made a strong showing that Li "pilfered" ███████████████████████████

9    ███████████████████████████████████ when he uploaded the files to ███████████████

10   account—indeed, Li has admitted as much. Applin Decl. at ¶22; *id.* Ex. G. And the misappropriated

11   information qualifies as confidential trade secret information because, as it "derives independent economic

12   value, actual or potential, from not being generally known to, and not being readily ascertainable through

13   proper means by, another person who can obtain economic value from the disclosure or use of the

14   information" and because xAI has "taken reasonable measures to keep such information secret." 18 U.S.C.

15   § 1839(3); *see also Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017) ("Source code,

16   which conveys facts or ideas, qualifies for trade secret protection" under California's nearly identical

17   definition of trade secret) (citing *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 56

18   (2014)).[3]

19

20   _____

[3] The DTSA provides that an "owner of a trade secret that is misappropriated may bring a civil action

21   under this subsection if the trade secret is related to a product or service used in, or intended for use in,

22   interstate or foreign commerce." 18 U.S.C.A. § 1836(b)(1). The interstate requirement is easily met here
     because xAI customers, including customers located across the U.S., access Grok 4 through the computer

23   web browsers at grok.com, mobile apps and by API access. Applin Decl. ¶ 32. Internet traffic serving
     many of these customers crosses state boundaries. Grok 4 is thus a product or service used or intended for

24   use in interstate commerce. *BarZ Adventures Inc. v. Patrick*, No. 4:20-CV-299, 2023 WL 2478550, at *9
     (E.D. Tex. Mar. 13, 2023) (requirement satisfied where trade secrets relate to mobile apps); *Complete*

25   *Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 520 (E.D. La. 2018) (requirement satisfied because
     defendant transacts business in other states by phone and internet, as well as by mail and in person); *Albert*

26   *S. Smyth Co. v. Motes*, No. CV CCB-17-677, 2018 WL 3635024, at *3 (D. Md. July 31, 2018)
     (requirement satisfied because a court may "easily infer that an online" business "attracts out-of-state

27   customers").

28

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
Case No. _____

As to independent economic value, the xAI data Li misappropriated is the result of the culmination of billions of dollars of investment and multiple years of AI development and training. Applin Decl. at ¶ 13. The xAI data that Li uploaded is ███████████████████████████████████████████████████████████████, and use the data to obtain a competitive advantage against xAI by preempting its product offerings and corporate objectives. *Id*. The data could be weaponized by competitors such as OpenAI to, at a minimum, improve competing products such as ChatGPT with Grok's more innovative and imaginative features which make Grok one of the most, if not the most, intelligent generative AI chatbots, undermine xAI's product roadmap, and disrupt its market expansion strategy. *Id*. It could save OpenAI and other competitors billions in R&D dollars and years of engineering effort, handing any competitor a potentially insurmountable advantage in the race to dominate the AI landscape. *Id*. Indeed, advanced AI models can cost greater than hundreds of millions of dollars to develop.[4]

And, xAI took at least reasonable measures to keep the information secret, including implementing all the technical measures described above, requiring employees to sign the Agreement and Termination Waiver, and even deploying the security software that detected Li's data exfiltration. *See*, e.g., *Posdata Co. v. Kim*, No. C-07-02504RMW, 2007 WL 1848661, at *5 (N.D. Cal. June 27, 2007) (in TRO context, finding plaintiff's use of confidentiality agreements and internal security measures constituted reasonable measures to protect trade secrets).

Li's trade secret misappropriation harmed and continues to harm xAI given the independent economic value (as discussed above) Li has put at risk, and for the reasons articulated in the next section, including diminished value of its Trade Secrets, loss of its competitive advantage, loss of business, and harm to its reputation and goodwill. Li already conceded in the Agreement that any breach thereof would result in irreparable injury to xAI. Applin Ex. B ¶ 9.1. To prevail on its breach of contract claim, xAI must prove: (1) the existence of the contract; (2) xAI's performance or excuse for nonperformance; (3) Li's breach; and (4) injury to xAI because of the breach. *Bodenburg v. Apple*, No. 24-3335, 2025 WL 2055748,

---

[4] Katharina Buchholz, *The Extreme Cost Of Training AI Models*, Forbes (Aug. 23, 2024), https://www.forbes.com/sites/katharinabuchholz/2024/08/23/the-extreme-cost-of-training-ai-models/.

at *3 (citing *Oasis W. Realty, LLC. v. Goldman*, 51 Cal. 4th 811, 821 (2011)). xAI is certain to succeed on the merits because Li has already admitted the first and third elements: the existence of the Agreement and his wrongful misappropriation of xAI's Confidential Information. Applin Decl. at ¶ 22; *id.* Ex. G. And, as to the second element, Li cannot dispute that xAI fully performed under the Agreement by compensating Li for his work as was stipulated in the Agreement.

As outlined above, Li has also clearly breached his Agreement, which required Li to protect the confidentiality of xAI's Confidential Information, by sending ███████████████████████ ████████████████████████, to ██████████████ account. Applin Decl. Ex. B ¶1.1; *id.* at ¶¶ 12, 22. He further breached the Agreement by refusing to return that information upon his departure, despite certifying his duty to do so and despite affirmatively representing that he had or would do so. *Id.* at ¶ 15, Ex. C. Li has admitted this in meetings with xAI while represented by counsel. Applin Decl. at ¶ 22; *id.* Ex. G.

And xAI has suffered injury because of the breach. Indeed, Li already conceded in the Agreement that any breach thereof would result in irreparable injury to xAI. Applin Ex. B ¶ 9.1. Regardless, xAI has also suffered and will continue to suffer diminished value of its intellectual property and other injuries, as described below, from Li's breach of the Agreement. Applin Decl. at ¶ 13. xAI has thus established a strong likelihood of success on the merits of its claim for breach of contract.

Courts in this district have found likelihood of success satisfied in similar circumstances. *See, e.g.*, *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (finding likelihood of success on the merits on misappropriation and breach of contract claims when defendant breached employment agreement by "e-mail[ing] and download[ing] to her personal devices, confidential information . . . before leaving her employment to work at a competitor"); *Tesla Inc. v. Khatilov*, 2021 WL 624174, at *1 (N.D. Cal. Jan. 22, 2021) (finding "substantial likelihood" of success on misappropriation and contract claims where defendant transferred 26,377 files "to his personal cloud storage account"); *WeRide Corp.*, 379 F. Supp. 3d at 848 (finding likelihood of success on misappropriation claims when defendant downloaded plaintiff's confidential information onto personal devices before leaving company for competitor and deleted logs to cover his tracks); *Comet Techs. U.S. of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK,

███████████

2018 WL 1990226, at *6 (N.D. Cal. Mar. 15, 2018) (granting motion for TRO, expedited discovery, and evidence preservation where employee downloaded over a hundred confidential documents from plaintiff's servers, saved them to an external memory device, lied about it, and tried to conceal his misconduct when confronted); *see also Edwards Lifesciences Corp. v. Launey*, 2023 WL 4680774, at *4 (C.D. Cal. June 12, 2023) (finding strong likelihood of success on misappropriation and breach of contract claims where defendant breached employment agreements by transmitting confidential information to himself before leaving employment); *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1099 (E.D. Cal. 2012) (granting TRO and motion for expedited discovery where employee downloaded plaintiff's confidential documents and information).

### C.    TRO Factor 2: xAI Will Suffer Irreparable Harm Absent Relief

Li's theft of xAI's sensitive Confidential Information poses a threat of irreparable harm for which there is no adequate remedy at law. *First*, Li already "agree[d] that any threat or actual violation of [the Agreement] or any of its terms will constitute immediate and irreparable injury to [xAI], and [xAI] will have the right to enforce [the Agreement] … by injunction, specific performance or other equitable relief, without bond …." Applin Decl. Ex. B ¶ 9.1. Li's "agree[ment] that his breach would cause irreparable harm" is "evidence of irreparable harm." *Mechanix Wear LLC v. Branson*, No. 2:24-CV-03090-RGK-AJR, 2024 WL 2846068, at *4 (C.D. Cal. Apr. 23, 2024); *see also Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999).

*Second*, even setting Li's admission aside, irreparable harm is plain, because courts "in this district have presumed that [a] Plaintiff will suffer irreparable harm if its proprietary information is misappropriated." *Google LLC*, 2025 WL 1616533, at *5 (cleaned up); *see also DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 875 (Aug. 25, 2003), *as modified*, (Oct. 15, 2003) ("California law clearly contemplates the use of injunctive relief as a remedy for trade secret misappropriation."). Li stole ███████████████████████████████ and other development information. xAI has invested tremendous resources developing its AI products and services, including years of engineering effort and billions of dollars in financial investment. Applin Decl. at ¶ 13. *Comet Techs.*, 2018 WL 1990226, at *5 (granting TRO where defendant took data related to project that plaintiff spent "expenditure of

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

considerable time and resources on"). The harm from allowing continued access and misuse of xAI's data "cannot be unwound after the fact, nor can it be adequately compensated for with monetary damages." *Waymo LLC v. Uber Techs.*, Inc., 2017 WL 2123560, at *10-11 (N.D. Cal. May 15, 2017) (finding a likelihood of irreparable harm where defendant maintained possession of over 14,000 files, which the court categorized as "a treasure trove" presenting "an ever-present danger wholly at [defendant's] whim.").

    *Third,* immediate relief is critical here because the stolen Confidential Information would give any competitor or adversary a competitive advantage in the AI race and harm xAI's own ability to compete. Applin Decl. at ¶ 13; *OOO Brunswick Rail Mgmt. v. Sultanov*, No. 5:17-CV-00017-EJD, 2017 WL 67119, at *3 (N.D. Cal. Jan. 6, 2017) (in trade-secret context, dissemination of confidential information to "[Claimant's] [] competitors … would cause [Claimant] irreparable harm."). The information would give a competitor or adversary a playbook into the development of the most advanced frontier AI model on the market, thus saving a competitor or adversary billions of dollars in investment and years of development time. Applin Decl. at ¶ 13. And this competitive harm is far from speculative, because Li already had an accepted job offer to work at OpenAI prior to resigning from xAI, making the risk of irreparable harm to xAI especially acute. Pochron Decl. at ¶¶ 22, 23. Allowing a competitor or adversary to incorporate xAI's confidential information into its own products will certainly result in a loss of prospective customers and goodwill to xAI. Applin Decl. at ¶ 13; *Henry Schein, Inc.*, 191 F. Supp. at 1077 ("threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm") (*quoting Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). Any xAI competitor or adversary that hires Li could thus gain an unfair advantage from Li's theft, and thus severely prejudice xAI's competitive position. Applin Decl. at ¶ 13. This remains true even if Li accesses the data without that competitor's knowledge or blessing, because Li could deceive his new employer—as he has deceived xAI here—by surreptitiously incorporating xAI's Confidential Information into the competitor's products and passing it off as his own original work. Moreover, Li may have already shared trade secrets with OpenAI, making an injunction to prevent further sharing imperative. Without immediate action by this Court, xAI thus risks irreparable harm that cannot be remedied by money damages or other post-

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
Case No. _____

judgment relief.

*Fourth*, emergency relief is critical to ensure that Li cannot remove xAI's Confidential Information to another country and thus permanently beyond the reach of xAI and this Court. *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 230 (S.D. Cal. 1986) (risk of use of trade secrets in another country supported finding of irreparable harm because defendant would be "placing the subject matter of this litigation beyond the jurisdiction of this court, thereby denying [plaintiff] the opportunity of obtaining complete relief"). As detailed above, Li arranged to have millions in cash on hand the day he downloaded xAI's data. Applin Decl. at ¶¶ 11, 12. He is also a Chinese national, and purports to be a permanent resident of Canada, where he traveled just last year. *Id.* at ¶¶ 8, 24; *id.* Ex. A. He thus has the means to flee to a foreign nation beyond the jurisdiction of the United States Courts, and take the Confidential Information with him. Indeed, Li was seen between August 13 and August 15 traveling with a suitcase and loitering in his car at the San Jose airport—even *after* he retained counsel. Rivera Decl. at ¶¶ 2-8.

### D.    TRO Factor 3: The Balance of Equities Weighs Heavily in Favor of Injunctive Relief

The balance of equities also strongly favors xAI. "To qualify for injunctive relief, [p]laintiff must establish that the balance of the equities tips in [its] favor." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quote omitted). A court has the "duty … to balance the interests of all parties and weigh the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). As discussed above, the likely harm to xAI is substantial. *See supra* Section III.B.

Yet if enjoined, Li will sustain no injury, as all he must do is comply with the law and the Agreement and Authorization he signed. *See WeRide*, 379 F. Supp. 3d at 854 ("no burden for [defendant] to do what the law already requires"); *see also Henry Schein*, 191 F. Supp. 3d at 1077 (no undue burden from enjoining defendant from "conduct that is already prohibited under the provisions of" a confidentiality agreement). Indeed, in executing the Agreement, Li already agreed to maintain the confidentiality and security of xAI's Confidential Information after his employment, to refrain from disclosing, using or publishing the information, to return all such information to xAI and to grant the Company any information needed to access that information, duties he flagrantly breached. Applin Decl. Ex. B. The temporary restraining order, which seeks essentially the same relief that Li already agreed to,

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**

Case No. _____

1    cannot possibly be an impermissible burden on him. And the Authorization that Li agreed to seeks only

2    to effectuate those same terms—the complete return of xAI's Confidential Information. Applin Decl. Ex.

3    E.

4         Without the requested relief, xAI cannot be assured that the threat of imminent harm has been

5    neutralized and that any further copying and misuse of its Confidential Information has been remediated

6    or ruled out. Any slight burden on Li is thus no more than is necessary to protect xAI's rights in the face

7    of Li's admitted misconduct and the irreparable harm it poses. *See Waymo*, 2017 WL 2123560, at *11;

8    *Implicit Conversions, Inc. v. Stine*, 2024 WL 4112335, at *12 (N.D. Cal. Sept. 6, 2024) (granting

9    preliminary injunction because it "will serve all parties' interests while the questions driving this litigation

10   are resolved"); *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1209 (E.D. Cal. 2020)

11   (where employees were found to engage in deliberate misappropriation, the court found that an injunction

12   "specially focused" on preventing the use of misappropriated trade secrets was appropriate); *Bank of Am.,*

13   *N.A. v. Immel*, No. C 10-02483 CRB, 2010 WL 2380877, at *3 (N.D. Cal. June 11, 2010) (in trade-secret

14   context, an injunction seeking "only the return of [Plaintiff's] confidential information and a prohibition

15   on the use of that information by [Defendant]" imposes only "slight" harm).

16        Thus, the equities strongly weigh in favor of granting the equitable relief sought.

17   **E.    TRO Factor 4: Granting The Temporary Restraining Order Is In The Public Interest**

18        Issuing an injunction will also serve the public good, because the public has a strong interest in

19   protecting xAI's Confidential Information. *WeRide*, 379 F. Supp. 3d at 854 ("Courts often find that the

20   public has a strong interest in protecting intellectual property rights"). "[T]here is also a public interest in

21   favor of enforcing employment agreements." *Branson*, 2024 WL 2846068, at *5; *see also Henry Schein*,

22   191 F. Supp. 3d at 1078 (the "public interest is served when [a] defendant is asked to do no more than

23   abide by trade laws and the obligations of contractual agreements signed with [his] employer"). When, as

24   here, a party has shown that it meets all other grounds for the issuance of a temporary restraining order,

25   "it follows that the public's interest in these circumstances favors an injunction 'specifically focused' on

26   [Li's] use of any misappropriated trade secrets." *Cutera, Inc.*, 444 F. Supp. 3d at 1120.

27        Indeed, granting this temporary restraining order is critical not only to xAI, but to the maintenance

28

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

of a fair and free market and robust competitive landscape, which are foundational to the public interest. The protection and enforcement of valid intellectual property rights are essential to maintaining a level playing field among competitors, preventing unfair advantages, and fostering the innovation and investment that drive economic growth. When a company such as xAI invests tremendous resources into developing leading AI models and protecting the Confidential Information associated therewith, those investments represent not only the company's own resources, but the collective efforts and careers of its employees. To permit the brazen misappropriation of such Confidential Information would profoundly undermine the integrity of the competitive process and disserve the national interest in maintaining and furthering leadership in AI innovation. The United States has ardently and unambiguously expressed its continued interest in preserving its position of leadership in the AI industry.[5] The public interest is thus served in ordering Li to honor his contractual obligations, and preventing him from using or disclosing xAI's Confidential Information.

### F. Requested Relief

xAI respectfully requests the relief set forth in the Proposed Order Granting Plaintiffs' Motion for Temporary Restraining Order. The relief falls loosely into two buckets: (1) an Order that Li abide by his obligations in the Agreement, Termination Waiver and Authorization, including importantly that xAI be granted forensic access to find and remove its Confidential Information from Li's accounts and devices; (2) an Order preventing Li from having a role or responsibility at, or communications with, OpenAI or other xAI competitor that would jeopardize xAI's trade secrets.

Regarding the former, while xAI seeks a Court order compelling Li to comply with his obligations under the Agreement and Termination Waiver, Li has demonstrated a willful disregard for both the law and his contractual commitments—even after receiving counsel from criminal defense and employment attorneys. As a result, xAI requires more than mere enforcement. It must be able to recover its intellectual

---

[5] *Removing Barriers to American Leadership in Artificial Intelligence*, Presidential Action, The White House, Jan. 23, 2025, https://www.whitehouse.gov/presidential-actions/2025/01/removing-barriers -to-american-leadership-in-artificial-intelligence/ ("It is the policy of the United States to sustain and enhance America's global AI dominance in order to promote human flourishing, economic competitiveness, and national security.").

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

property and ensure it is no longer in Li's possession. This can only be achieved through a Court order authorizing a forensic examination, by a qualified expert, of all of Li's personal accounts and devices. Notably, Li has already agreed to this relief, though his agreement appears to be yet another unfulfilled promise. xAI respectfully requests that the Court grant the relief to which Li has already consented.

As to the latter, the court in *Waymo*, on very similar facts, granted Waymo similar relief against competitor Uber. The court noted that its order "mainly prohibits" Waymo's former employee "from working on" the competing technology which Uber had already "implemented on its own initiative." *See Waymo*, 2017 WL 2123560, at *13. The court concluded that "the hardship on defendants will be minimal. On the other hand, this will provide considerable protection to Waymo against [their former employee's] potential misuse of its proprietary information in competing technology." *Id*. Noting that even if the former Waymo employee committed not to use the trade secrets, "his word under these circumstances would be cold comfort against the danger of trade secret misappropriation for Uber's benefit." *Id*. at *5, 13 (ordering that the defendants including Uber "(a) remove [the former Waymo employee] from any role or responsibility pertaining to [the competing technology]; [and] (b) take all steps in their power to prevent him from having any communication on the subject of [the competing technology] with any officer, director, employee, agent, supplier, consultant, or customer of defendants."). The same reasoning applies with even more force here where not only has OpenAI already developed the competing generative AI technology and commanded 80 percent of the market, but where Li has continually engaged in subterfuge and shows no ability to keep his word. Moreover, because Li has not yet commenced employment at OpenAI and remains at risk of joining another xAI competitor before xAI can fully recover its trade secrets, xAI respectfully requests that the Court extend the scope of its order to encompass other potential competitors as well.

## IV.    THE COURT SHOULD PERMIT EXPEDITED DISCOVERY

xAI seeks expedited discovery to determine (a) the current location of its misappropriated Confidential Information, (b) whether and under what circumstances Confidential Information has been disclosed and (c) whether Li or anyone else is currently using it. xAI also seeks discovery to investigate Li's communications with others about the Confidential Information and to conduct a forensic

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

examination of Li's devices and accounts. Finally, xAI seeks discovery to uncover details about Li's new employer. Proposed interrogatories and inspection requests are attached to the Declaration of Carson Swope as Exhibits B and C. Finally, xAI seeks a deposition to explore the topics therein with Li.

### A.    Expedited Discovery Is Necessary to Prevent Further Irreparable Harm to xAI

Although parties generally may not seek discovery before the conference required by Federal Rule of Civil Procedure 26(f), a "[c]ourt may authorize early discovery … if the requesting party establishes 'good cause' for" it. *Strike 3 Holdings, LLC v. Doe*, No. 24-CV-03852-PHK, 2024 WL 4445129, at *3 (N.D. Cal. Oct. 8, 2024) (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)); *see also* Fed. R. Civ. P. 26(d)(1) (permitting discovery before Rule 26(f) conference "by court order"). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs prejudice to the responding party." *Strike 3 Holdings*, 2024 WL 4445129, at *3.

Protecting xAI from further irreparable harm is reason enough to permit expedited discovery here. *See Comet Techs.*, 2018 WL 1990226, at *7 (granting expedited discovery in a trade secrets case because it "is essential in order to minimize any harm to Plaintiff's competitive position"); *WeRide Corp.*, 379 F. Supp. 3d at 854 (expedited discovery "will help to minimize harm to WeRide's competitive position and to protect WeRide's trade secrets from disclosure"). xAI needs the requested expedited discovery to determine the whereabouts and potential use or disclosure of its Confidential Information. xAI has no other source of obtaining this information, except through interrogation of Li and his devices and accounts, and subpoenas of at least OpenAI, ███, and ███. Without expedited discovery, xAI will be unable to mitigate the ongoing irreparable harm caused by Li's misappropriation, and thus good cause is met.

### B.    Additional Factors Favor Expedited Discovery Here

In balancing the need for discovery against the prejudice to the defendant, some courts also consider: (a) whether a preliminary injunction is pending; (b) the breadth of the discovery requests; (c) the purpose for requesting the expedited discovery; (d) the burden to comply with the requests; and (e) how far in advance of the typical discovery process the request was made. *Strike 3 Holdings*, 2024 WL 4445129, at *3. These factors do not impose a rigid test. Rather, the "good cause" standard is "flexible,"

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

and courts have "broad discretion" in determining whether to grant early discovery *Semitool*, 208 F.R.D. at 275; *Strike 3 Holdings*, 2024 WL 4445129, at *3. Each factor supports permitting expedited discovery here.

**Preliminary Injunction:** This Motion seeks an order to show cause for a preliminary injunction and the expedited discovery will support that request. The discovery will also help the Court fashion appropriate relief, and thus this factor "weigh[s] in favor of" xAI's "request to conduct expedited discovery." *Light Salt Invs., LP v. Fisher*, No. 13CV1158- MMA DHB, 2013 WL 3205918, at *2 (S.D. Cal. June 24, 2013) (finding first factor weighed in favor of expedited discovery because plaintiff "indicates that it plans to file a motion for preliminary injunction in the near future").

**Breadth of the Discovery:** The requested discovery is narrowly tailored to support this Motion and xAI's request for a preliminary injunction. *Comet Techs.*, 2018 WL 1990226, *7 (granting request for expedited discovery to "[q]uickly determin[e] what information [d]efendant removed from Plaintiff, and whether and how [p]laintiff's information is being used by [p]laintiff's competitors"). The same is true for the requested forensic examination of Li's devices and accounts. *Charles Schwab & Co. v. Newton*, No. 16-cv-00236, 2016 WL 1752767, at *1 (M.D. La. May 2, 2016) (ordering defendant to "make any and all such data, devices and media available for inspection, imaging and duplication by [p]laintiff's counsel and/or [p]laintiff's computer forensic consultants"); *Ameriwood Indus., Inc. v. Liberman*, No. 06-cv-524, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006), *amended*, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) ("allegations that a defendant downloaded trade secrets onto a computer provide a sufficient nexus between plaintiff's claims and the need to obtain a mirror image of the computer's hard drive"). And, as noted above, Li has already deleted files *and* made false and misleading representations in an attempt to conceal his wrongdoing. Pochron Decl. at ¶ 25. Expedited discovery, including an order requiring Li to turn over his personal accounts and devices for inspection, is necessary to prevent any further loss of evidence from similar misdeeds. *See, e.g., WeRide Corp.,* 379 F. Supp. 3d at 854 (granting motion for expedited discovery in trade secret and breach of contract case against former employees that had "already deleted computer files on at least two relevant devices").

**Purpose of the Discovery:** The discovery seeks (a) to determine the scope of misappropriation of

20

confidential and proprietary information and trade secrets, (b) to mitigate ongoing irreparable harm from the misappropriation, and (c) to aid the Court in fashioning appropriate preliminary relief, all proper purposes in a stolen-information case like the one here. *See, e.g., Beuerman*, 2018 WL 1990226, at *7 (granting expedited discovery to "[q]uickly determin[e] what information [d]efendant removed from [p]laintiff, and whether and how [p]laintiff's information is being used by [p]laintiff's competitors"); *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94-cv-5620, 1994 WL 719696, at *4 (S.D.N.Y. Dec. 28, 1994) (allowing expedited discovery before preliminary injunction motion because "[plaintiff's] contention that [defendant] has misused confidential or proprietary information … sufficiently support[s] the requested expedited discovery"); *Fisher*, 2013 WL 3205918, at *2 (authorizing expedited discovery because plaintiff "has shown that it needs" the discovery "to support its contemplated motion for preliminary injunction"); *Wachovia Sec., LLC v. Stanton*, 571 F. Supp. 2d 1014, 1049-50 (N.D. Iowa 2008) (granting plaintiff's motion for expedited discovery to prepare for preliminary injunction hearing in trade secret misappropriation case).

**Burden on Li:** xAI has crafted narrowly tailored discovery requests to obtain information without undue burden. Indeed, Li already agreed, in the Agreement and Authorization, to provide xAI with access to Li's devices and accounts so that xAI can identify and delete its Confidential Information, obligations that mirror the proposed discovery here. Applin Decl. Ex. B ¶ 8, Ex. E. It is no burden to require Li to comply with his prior agreements.

**Timing of Request:** "[T]his factor, alone, does not make the requested [discovery] unreasonable." *Fisher*, 2013 WL 3205918, at *2. Indeed, as noted above, courts routinely permit expedited discovery where, as here, xAI has shown good cause otherwise exists for allowing it.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, xAI respectfully requests that the Court issue (a) the Proposed Temporary Restraining Order and Order Permitting Expedited Discovery without bond and (b) the Proposed Order to Show Cause re Preliminary Injunction on an urgent and expedited basis.

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____

█████████

Dated: August 28, 2025                 **WINSTON & STRAWN LLP**


                                        By: */s/ Kathi Vidal*
                                            KATHI VIDAL
                                            ALEXANDER H. COTE
                                            CARSON SWOPE

                                        Attorneys for Plaintiffs X.AI Corp. and X.AI LLC

**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND ORDER TO SHOW CAUSE**
CASE NO. _____