CHRISTIAN E. PICONE, CA STATE BAR NO. 218275
BERLINER COHEN, LLP
TEN ALMADEN BOULEVARD
ELEVENTH FLOOR
SAN JOSE, CALIFORNIA 95113-2233
TELEPHONE: (408) 286-5800
FACSIMILE: (408) 998-5388
christian.picone@berliner.com

ATTORNEYS FOR SPECIALLY APPEARING FOR
DEFENDANT XUECHEN LI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| X.AI Corp., a Nevada corporation, and X.AI LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>XUECHEN LI,<br><br>Defendant. | CASE NO. 3:25-cv-07292-RFL<br><br>DEFENDANT'S BRIEF REGARDING FIFTH AMENDMENT ISSUES RELATED TO THE TEMPORARY RESTRAINING ORDER (DOC. NO. 20)<br><br>Date:       September 2, 2025<br>Time:      2:00 PM<br>Judge:     Hon. Rita F. Lin<br><br>Case Filed: August 28, 2025 |

Pursuant to the Order Granting Plaintiff's Motion for Temporary Restraining Order and Permitting Expedited Discovery as Modified (Doc. No. 20, and referred to herein as the "Order"), Defendant Xuechen Li ("Li") submits his Brief in support of his Fifth Amendment privilege against self-incrimination in response to the Order and expedited discovery provided for in the Order.

I. LI ASSERTS HIS FIFTH AMENDMENT PRIVILEGE AGAINST SELF INCRIMINATION AS TO RESPONSES TO SECTIONS 1, 2 AND 5 OF THE COURT'S ORDER (DOC. NO. 20)

By examining the materials requested and the relief sought by the proposed order submitted with Plaintiff X.AI Corp.'s ("xAI") application for a temporary restraining order ("TRO"), it is clear that xAI is seeking wide-ranging, broad-sweeping discovery specifically designed to provide a "link in the chain" to be used by law enforcement in the current criminal investigation and any ensuing criminal proceedings. Accordingly, the need for protection of Li's constitutional rights

under the Fifth Amendment is not a merely hypothetical concern.

Indeed, the day before xAI filed their civil complaint against Mr. Li, the Federal Bureau of Investigation ("FBI") executed search warrants at his residence, his car, his person, and his hotel room, seizing three cell phones, notepads, documents, notebooks, books, bank receipts, keys, and a flash drive – items that were considered by the FBI to be within the scope of the search warrants. Li was formally informed that there was a federal criminal investigation.

The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." As the Supreme Court has long held, "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States* (1951) 341 U.S. 479, 486-487. "[T]he privilege has consistently been accorded a liberal construction." *Miranda v. Arizona* (1966) 384 U.S. 436, 461.

The law is well settled that a party asserting the Fifth Amendment privilege should suffer no penalty for the exercise of a constitutional right. As explained by the Supreme Court: "In this context 'penalty' is not restricted to fine or imprisonment. It means, as we said in *Griffin v. State of California*, 380 U.S. 609, 85 S.Ct. 1229 . . . the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack v. Klein* (1967) 385 U.S. 511, 515.

The federal courts have made clear that the Fifth Amendment may be asserted in "any proceedings, civil or criminal, administrative or judicial, investigatory or adjudicatory," in which the witness reasonably believes that information sought could be used in a subsequent criminal proceeding. *United States v. Balsys* (1998) 524 U.S. 666, 672 (citing *Kastigar v. United States* (1972) 406 U.S. 441, 444–445); see also *McCarthy v. Arndstein* (1924) 266 U.S. 34, 40 (the privilege "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it.").

A. <u>Section 1(a) of the Order</u>

Li has complied with the Court's Order and has obtained a single phone and new email account after the FBI conducted a search warrant and seized items from his person, hotel

1   room, apartment, and motor vehicle. A new phone was obtained on August 27 after Li voluntarily
2   surrendered computers and cell phone to xAI on August 14 and 15. As of that time, Li no longer
3   had access, custody, or control of his email account at issue in this case nor other accounts that
4   require multifactor authentication (multifactor authentication requires the cell phone that xAI took
5   and per xAI's counsel is with the FBI). Further, pursuant to the Court's Order, Li procured new
6   devices and created new accounts going forward, and nothing was moved there from existing
7   devices and accounts. (See Order 2:18-19.) Li has used his new devices extensively to
8   communicate (email, text, and voice communication with his current attorneys), and attorneys in
9   which he sought legal advice and representation on or after August 27, 2025). All such
10  communication falls under attorney-client privilege. While the issue is not specifically a Fifth
11  Amendment privilege issue, xAI wants Li's protected communications examined. The phone and
12  new email account fall outside of the scope of the Order.

        B.    <u>Section 1(c) of the Order</u>

Section 1(c) requires Li to identify "where any Confidential Information belonging to xAI is or has been stored, maintained, or accessed." Any substantive response to this request (i.e., other than asserting the Fifth Amendment), would subject Li to furnishing a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman,* 341 U.S. at 486-487 (2000). Here, the criminal investigation pertains to the alleged removal of xAI's confidential information for use outside of xAI. Identifying where information was or is stored, maintained, or accessed would constitute a roadmap to evidence needed to prosecute Li. Therefore, given the active FBI investigation, compliance with section 1(c) of the Order would violate Li's Fifth Amendment rights.

        C.    <u>Section 2 of the Order</u>

Initially, Li questioned what role criminal defense counsel could undertake based on the Temporary Restraining Order. This issue appears to be moot as, after meeting and conferring, counsel expects to reach agreement as to how to proceed to allow defense counsel access. In the event that counsel cannot resolve the issue through the meet-and-confer process, the Court's intervention may be required.

D.  Section 5 of the Order: xAI's Expedited Discovery

1.  Interrogatory Nos. 1-6 and 11

Compelling Li to respond to xAI's Expedited First Set of Interrogatories, Interrogatory Nos. 1-6 and 11 improperly encroach upon Li's Fifth Amendment rights. As explained above, it is well settled that the Fifth Amendment protects an individual from being compelled to provide a "link in the chain" for his own prosecution. *Hoffman v. United States* (1951) 341 U.S. 479, 486-487. Thus, the Supreme Court has held that an individual cannot be compelled to make statements that would direct law enforcement to incriminating evidence, even if the statements themselves are not incriminating:

> [T]he phrase "in any criminal case" in the text of the Fifth Amendment might have been read to limit its coverage to compelled testimony that is used against the defendant in the trial itself. It has, however, long been settled that its protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence. Thus, a half century ago we held that a trial judge had erroneously rejected a defendant's claim of privilege on the ground that his answer to the pending question would not itself constitute evidence of the charged offense. As we explained:
>
> "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).
>
> Compelled testimony that communicates information that may "lead to incriminating evidence" is privileged even if the information itself is not inculpatory. *Doe v. United States,* 487 U.S. 201, 208, n. 6, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). It is the Fifth Amendment's protection against the prosecutor's use of incriminating information derived directly or indirectly from the compelled testimony of the respondent that is of primary relevance in this case.

*U.S. v. Hubbell*, 530 U.S. 27, 37-38 (2000).

Here, Interrogatory Nos. 1-6 and 11 require Li to respond to his alleged possession, control, and disclosure of xAI property, which is the subject of a criminal investigation. Based on the focus

and scope of the search warrant, the Government appears to be investigating whether Li gave xAI's data to foreign governments and/or industry competitors, and potentially the crime of accessing information beyond one's authority. Statements about removing xAI property, where it went, who received a copy and how, etc., fall within the scope of the criminal. Li cannot be required to provide a link in the chain related to alleged criminal activity.

Further, the very nature of each request requiring him to acknowledge unlawful possession of xAI property outside of his former employment requirements and/or after terminating his employment triggers Fifth Amendment protection. These are facts that prosecutors would need to establish in any criminal prosecution. Li should not be compelled to respond substantively (i.e., other than asserting the Fifth Amendment) to Interrogatory Nos. 1-6, and 11.

2. <u>Interrogatory Nos. 7-10</u>

Compelling Li to respond to Interrogatory Nos. 7-10 could provide a link in the chain to establish a crime. Li's privilege against self incrimination extends beyond specific answers that may directly support evidence of criminal activity. The privilege applies and is further extended when answers might furnish a link needed to prosecute a civil litigant for a federal crime. *Hoffman,* 341 U.S. at 486. Compelled testimony under oath which elicits information that may "lead to incriminating evidence" is privileged even if the information itself is not immediately inculpatory. *Doe v. United States*, 487 U.S. 201, 208, n. 6, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988).

Here, the FBI is apparently investigating whether Li produced xAI's property to industry competitors and/or foreign officials. Interrogatory No. 7 pertains to future employment, which may provide evidence of intent (as well as motive and reason) for the alleged theft of xAI property. For example, the federal authorities may claim that Li sought to gain employment with the competitor by providing xAI's property to the competitor. Interrogatory No. 8 asks about Li's contacts with foreign officials, which may provide evidence of intent (and motive and reason) for the alleged theft relating to foreign governments. Further, Li (a Chinese national) could be compelled pursuant to China's national security laws to cooperate with the China's intelligence services, which may include corporate theft. Providing, under oath, identification of physical (No. 9) and cloud storage devices (No. 10) may provide evidence of the

location of xAI property that is the subject of the criminal investigation. Thus, the Fifth Amendment protects Li from responding substantively to these questions.

### 3. Request for Production Nos. 1, 2, 4, and 8

Requiring that Li substantively respond to xAI's Expedited First Set of Request for Production Nos. 1, 2, 4, and 8 could force him to provide a link in the chain related to criminal activity and, by the very nature of each production demand, require him to acknowledge unlawful possession of xAI property outside of his former work requirements and/or after terminating his employment, which is a necessary element in any criminal prosecution.

In *U.S. v. Hubbell*, 530 U.S. 27 (2000), the Supreme Court held that the Fifth Amendment protections limited the court's ability to order the person to produce documents and answer questions under oath about that production, given that producing documents might evidence the person's illegal possession of such documents:

> [W]e have also made it clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect. We have held that "the act of production" itself may implicitly communicate "statements of fact." By "producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." Moreover, as was true in this case, when the custodian of documents responds to a subpoena, he may be compelled to take the witness stand and answer questions designed to determine whether he has produced everything demanded by the subpoena. The answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents. Whether the constitutional privilege protects the answers to such questions, or protects the act of production itself, is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating.
>
> Finally, the phrase "in any criminal case" in the text of the Fifth Amendment might have been read to limit its coverage to compelled testimony that is used against the defendant in the trial itself. It has, however, long been settled that its protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence. Thus, a half century ago we held that a trial judge had erroneously rejected a defendant's claim of privilege on the ground that his answer to the

pending question would not itself constitute evidence of the charged offense. As we explained:

> "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Compelled testimony that communicates information that may "lead to incriminating evidence" is privileged even if the information itself is not inculpatory. *Doe v. United States,* 487 U.S. 201, 208, n. 6, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). It is the Fifth Amendment's protection against the prosecutor's use of incriminating information derived directly or indirectly from the compelled testimony of the respondent that is of primary relevance in this case.

*Hubbell*, 530 U.S. at 36-38.

Here, part of the criminal investigation focuses on Li's alleged possession of xAI's property and disclosure to competitors and foreign governments. Request for Production Nos. 1, 2, 4, and 8 requires Li to produce all xAI property in his possession. In addition, Request for Production No. 4 would encompass any communications wherein Li is disclosing xAI property Responding to the requests for production could require Li to acknowledge a criminal act or a link in the chain of evidence of criminal act, and thus is subject to the protection of the Fifth Amendment.

### 4. Request for Production Nos. 3, 5, and 6

Compelling Li to respond to xAI's Expedited First Set of Requests for Production Nos. 3, 5, and 6, and could provide a link in the chain to establish a crime. The privilege against self-incrimination involves the protection of privacy values. This right of privacy, under the Fifth Amendment to the United States Constitution, protects at least uncommunicated thoughts and has been extended to preclude compelled production of private papers and documents. (*People v. Rucker* 26 Cal. 3d 368, 381.) The act of producing documents would require that Li admit his possession of documents central to the criminal investigation. *Hubbell*, 530 U.S. at 36.

As mentioned, the federal investigation is looking at whether Li disclosed xAI's property to competitors and/or foreign governments. Request for Production No. 3 seeks documents and

communications between Li and prospective employers. This request implicates Li's Fifth Amendment Privilege because a substantive response could supply a link to intent and motive for the alleged theft – to curry favor with a new employer who may be in competition with xAI – as well as intent to transmit the information to competitors. Request for Production Nos. 5 and 6 seek documents and communications with any foreign government or foreign entity. Responding substantively could implicate Li's Fifth Amendment Privilege because any production could be a link in the chain of evidence of purported theft of xAI's property to provide to a foreign government (compelled pursuant to China's national security laws) or to curry favor and possible employment with a foreign entity. The Fifth Amendment protects Li from responding substantively to Request for Production Nos. 3, 5, and 6.

        5.        <u>Request for Inspection Nos. 1 and 2</u>[1]

Compelling Li to produce for inspection computers, devices, backup media, and electronic storage devices (Request No. 1), and cloud storage accounts (Request No. 2) that have contained xAI's property runs afoul of the Fifth Amendment by requiring Li's active assistance in the criminal investigation. Data storage, whether physical or cloud, that, at any time, has contained xAI's property are at the heart of the criminal investigation. Requiring Li to respond about any type of storage material would require Li to acknowledge possession of material that is the subject of the criminal investigation. Therefore, Li is entitled to assert his Fifth Amendment Privilege and refuse to produce or even acknowledge any storage material.

II.    <u>NEXT STEPS</u>

xAI will likely argue that the court should impose some type of adverse inference against Li for invoking his Fifth Amendment rights. (See *Keating v. Office of Thrift Supervision*, 45 F. 3d 322, 326 9th Cir. 1995).) Or bar testimony (wife of insured barred from testifying because she invoked the Fifth Amendment at her deposition) *Nationwide Life Ins. Co. v. Richards*, 541 F. 3d 903.910 (9th Cir. 1989). However, such extreme punishment at the beginning of the case is

---

[1] xAI's Expedited First Set of Request for Production include, at the end, two Requests for Inspection.

CASE NO. 3:25-CV-07292-RFL -8- DEFENDANT'S BRIEF REGARDING FIFTH AMENDMENT ISSUES RELATED TO THE TEMPORARY RESTRAINING ORDER (DOC. NO. 20)

4936-7903-7799v3
CEP\34704001

1   premature. The better route is to allow the criminal investigation to proceed and allow Li to
2   exercise his Fifth Amendment privilege as to the expedited discovery and invoke the privilege on
3   a question-by-question basis at his deposition. The Court should, however, decline any type of
4   adverse inference or testimony bar at this time. Rather, once a case is set for trial, the Court should
5   establish a deadline by which Li must decide to permanently invoke his Fifth Amendment rights
6   or proceed with discovery.

8   DATED: SEPTEMBER 8, 2025                    BERLINER COHEN, LLP

10                                              BY:  /S/ CHRISTIAN E. PICONE
                                                     CHRISTIAN E. PICONE
11                                                   ATTORNEYS SPECIALLY APPEARING FOR
                                                     DEFENDANT XUECHEN LI

CASE NO. 3:25-CV-07292-RFL     -9-
DEFENDANT'S BRIEF REGARDING FIFTH AMENDMENT ISSUES RELATED TO THE TEMPORARY RESTRAINING ORDER (DOC. NO. 20)

4936-7903-7799v3
CEP\34704001