REDACTED VERSION

KATHI VIDAL (State Bar No. 194971)
kvidal@winston.com
MATTHEW R. MCCULLOUGH (State Bar No. 301330)
mrmccullough@winston.com
CARSON SWOPE (State Bar No. 353352)
cswope@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

M. BRETT JOHNSON (admitted *Pro Hac Vice*)
mbjohnson@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

ALEXANDER H. COTE (State Bar No. 211558)
acote@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Plaintiffs X.AI Corp. and X.AI LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| X.AI Corp., a Nevada corporation, and X.AI LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>XUECHEN LI, an individual,<br><br>Defendant. | **Case No. 3:25-cv-07292-RFL**<br><br>**PLAINTIFFS X.AI CORP. AND X.AI LLC'S MEMORANDUM REGARDING DEFENDANT LI'S FIFTH AMENDMENT OBJECTIONS**<br><br>Courtroom: Courtroom 15<br>Judge: Hon. Rita F. Lin |

# TABLE OF CONTENTS

I.   Introduction ................................................................................................................... 1

II.   Legal Standard .............................................................................................................. 1

III.  Responses to Li's Objections ........................................................................................ 3

    A.    Paragraph 1(a) ................................................................................................... 3

    B.    Paragraph 1(c) ................................................................................................... 4

    C.    Paragraph 2(a)-(b) ............................................................................................. 6

    D.    Paragraph 5 ....................................................................................................... 6

IV.  Third Party Discovery is Crucial Here .......................................................................... 7

V.   Conclusion .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Noaimi v. Zaid*,
   No. 11-1156-EFM, 2012 WL 4758048 (D. Kan. Oct. 5, 2012) ..................................................9

*Commodity Futures Trading Comm'n v. Nawabi*,
   2022 WL 5186233 (E.D. Cal. Oct. 5, 2022) .................................................................2, 6

*Couch v. United States*,
   409 U.S. 322 (1973) ...........................................................................................7, 8

*Davis v. Fendler*,
   650 F. 2d 1154 (9th Cir. 1981) ................................................................................2

*Fisher v. U.S.*,
   425 U.S. 391 (1976) ...........................................................................................8

*Glazer v. Fireman's Fund Ins. Co.*,
   No. 11 CIV. 4374 PGG FM, 2012 WL 1197167 (S.D.N.Y. Apr. 5, 2012) ..............................9

*Goldwater Bank, N.A. v. Elizarov*,
   2022 WL 17081192 (C.D. Cal. Sept. 21, 2022) ............................................................2

*In re Grand Jury Subpoena (Maltby)*,
   800 F.2d 981 (9th Cir. 1986) ..................................................................................8

*Lefkowitz v. Turley*,
   414 U.S. 70 (1973) .............................................................................................1

*Nat'l Corp. Tax Credit Funds III v. Potashnik*,
   2008 WL 11339608 (C.D. Cal. June 16, 2008) .........................................................2, 6

*Negro v. Superior Ct.*,
   230 Cal. App. 4th 879 (2014) .................................................................................8

*Pobursky v. Madera Cnty.*,
   2009 WL 4127916 (E.D. Cal. Nov. 23, 2009) ..............................................................1

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
   232 F.3d 1258 (9th Cir. 2000) ....................................................................1, 2, 5, 6

*Rutherford v. PaloVerde Health Care Dist.*,
   2014 WL 12633525 (C.D. Cal. Oct. 23, 2014) ............................................................7

*S.E.C. v. Jerry T. O'Brien, Inc.*,
   467 U.S. 735 (1984) ...........................................................................................8

REDACTED VERSION

*Schaeffer v. Gregory Vill. Partners, L.P.*,
   78 F. Supp. 3d 1198 (N.D. Cal. 2015) ................................................................................3

*SEC v. Colello*,
   139 F. 3d 674 (9th Cir. 1998) ..............................................................................................5

*In re Seper*,
   705 F.2d 1499 (9th Cir. 1983) .............................................................................................4

*In re Subpoena Duces Tecum to AOL, LLC*,
   550 F. Supp. 2d 606 (E.D. Va. 2008) ..................................................................................9

*United States v. Brown*,
   918 F.2d 82 (9th Cir. 1990) .................................................................................................2

*United States v. Nobles*,
   422 U.S. 225 (1975) ............................................................................................................7

*United States v. Ruehle*,
   583 F.3d 600 (9th Cir.2009) ................................................................................................3

*Xyngular Corp. v. Schenkel*,
   2013 WL 10733830 (N.D. Cal. Nov. 5, 2013) ................................................................2, 4

*Yu v. ByteDance Inc.*,
   759 F. Supp. 3d 992 (N.D. Cal. 2024) .................................................................................5

**Statutes**

18 U.S.C. § 2702(b)(3) ...........................................................................................................8, 9

18 U.S.C. § 2702(c)(2) ................................................................................................................8

**Other Authorities**

Fed.R.Civ.P. 1 .............................................................................................................................9

Fed.R.Civ.P. 26, 26(b)(2) and 26(c) .......................................................................................7, 9

Fed.R.Civ.P. 37 ...........................................................................................................................9

## I. Introduction

Recognizing xAI's likelihood of success and the irreparable harm xAI could suffer from Li misappropriating trade secrets and confidential information that fundamentally underpin the core of xAI's business model, this Court issued a Temporary Restraining Order on September 2, 2025. Dkt. 20 ("TRO"). The TRO authorized immediate and expedited discovery to prevent further irreparable harm. *Id.* Given the significant risk posed by the alleged misappropriation, the Court ordered Li to notify xAI by the end of the following day as to which relief he intended to invoke the Fifth Amendment privilege, along with the specific grounds for each assertion. *Id.* at 5. In his September 3 filing, Li raises objections to paragraphs 1(a) and (c), 2(a)-(b), and 5 of the TRO.[1] Dkt. 27.

## II. Legal Standard

The Fifth Amendment to the United States Constitution provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself …" *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). The Amendment protects individuals not only from being compelled to testify against themselves in criminal prosecutions, but also grants them the right to refuse to answer official questions in any type of proceeding—whether civil or criminal, formal or informal—if their responses could potentially incriminate them in future cases. *Id.* (citation omitted).

While a defendant can assert the Fifth Amendment in response to civil discovery requests, *see, e.g.*, *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263-65 (9th Cir. 2000) (recognizing that the Fifth Amendment can be properly invoked in civil discovery where a response would be testimonial and incriminating, such as by admitting the existence, possession, or authenticity of documents or information), a litigant's rights must be balanced against the compelling needs of the opposing party to preserve, recover, and protect evidence and to vindicate its interests. *See Pobursky v. Madera Cnty.*, 2009 WL 4127916, at *2 (E.D. Cal. Nov. 23, 2009) ("a party's Fifth Amendment interests are to be balanced against the opposing party's interests so as to 'ensure that the opposing party is not unduly disadvantaged'").

---

[1] Li offers no objections to paragraphs 1(b), 1(d), 1(e) and 2(c)-(g) of the TRO. xAI will not address those provisions here and anticipates that Li will fully comply with them.

  Courts have consistently required individuals invoking the Fifth Amendment privilege to specifically demonstrate how responding to particular questions may result in self-incrimination. *See Davis v. Fendler*, 650 F. 2d 1154, 1160 (9th Cir. 1981) ("A proper assertion of Fifth Amendment privilege requires, at a minimum, a good faith effort [by the party asserting the privilege] to provide the trial judge with sufficient information from which [she] can make an intelligent evaluation of the claim."). Blanket, across-the-board invocations of the Fifth Amendment are improper and legally insufficient. *See United States v. Brown*, 918 F.2d 82, 84 (9th Cir. 1990) ("[m]ere 'blanket assertion[s]' of Fifth Amendment rights are insufficient"). Rather, the privilege against self-incrimination must be asserted on a question-by-question or request-by-request basis, and the party invoking the privilege bears the burden of demonstrating a real and appreciable risk of self-incrimination as to each specific inquiry. *See e.g., Glanzer*, 232 F.3d at 1265 ("the Fifth Amendment's protections against self-incrimination are invoked on a question-by-question basis . . . the assertion of the privilege necessarily attaches only to the question being asked and the information sought by that particular question."); *Nat'l Corp. Tax Credit Funds III v. Potashnik*, 2008 WL 11339608, at *2 (C.D. Cal. June 16, 2008) ("The [Fifth Amendment] privilege must be asserted in response to each interrogatory, request for production, or other discovery device."); *Commodity Futures Trading Comm'n v. Nawabi*, 2022 WL 5186233, at *4 (E.D. Cal. Oct. 5, 2022) (rejecting defendant's Fifth Amendment objections where he offered only blanket, overarching assertions rather than specific, focused arguments tied to the particular discovery requests at issue, and failed to address whether compelled production would itself be testimonial).

  Moreover, waiver of the Fifth Amendment privilege can occur when a party has already voluntarily disclosed or authenticated documents or information on incriminating topics, thereby limiting the scope of any subsequent privilege assertion. *See Xyngular Corp. v. Schenkel*, 2013 WL 10733830, at *5–6 (N.D. Cal. Nov. 5, 2013) (holding that a witness's prior submission and authentication of documents in a related proceeding constituted "incriminating" statements sufficient to constitute waiver as to those documents, and that the scope of the privilege was limited to exclude materials already disclosed or authenticated); *see also Goldwater Bank, N.A. v. Elizarov*, 2022 WL

17081192, at *4 (C.D. Cal. Sept. 21, 2022) (holding that defendant waived the right against self-incrimination upon voluntary disclosure of a purportedly protected document).

Litigants can also assert the attorney-client privilege as a basis for withholding documents or information protected by the privilege. Any assertions of the privilege, though, must be narrowly tailored and affirmatively provided by the party asserting the privilege. *See Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d 1198, 1202 (N.D. Cal. 2015) (citing *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir.2009)) ("Where a given communication contains both privileged and non-privileged information, the party asserting the privilege may bear the burden of 'segregat[ing] the privileged information from the non-privileged information.'"); *see also Ruehle*, 583 F.3d at 607 ("'A party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication,'" and the privilege "'ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'") (internal citations omitted).

### III.    Responses to Li's Objections

#### A.    Paragraph 1(a)

Li, of course, does not assert the Fifth Amendment with respect to the devices he has already produced to xAI. He does, though, object to providing his new phone or access to his new ▇ account on the basis that (1) they are not subject to the Court's TRO and (2) they may contain attorney-client privileged communications. The first position cannot be reconciled with the plain language of the TRO, which expressly ordered Li to surrender devices and online storage repositories "that are **currently accessible** by Li or in Li's possession, custody, or control." TRO, ¶ 1(a). The Court made allowance, apparently in response to Li's arguments at the TRO hearing, for Li to "procure new devices and create new accounts **going forward**, so long as nothing is moved there from his existing devices and accounts." *Id.* Thus, the only devices and accounts outside the scope of paragraph 1(a) are new devices and accounts Li procures *after* September 2, 2025, the date of the TRO.

Accessing this device and account is critical to xAI's ability to verify that no Confidential Information is present on them. Indeed, xAI argued exactly this at the hearing: "We don't know even as to his new phone and his new system whether he moved the information from his old system to the new system. ... So, the only way that X.AI can be sure that all of its confidential information and

1  source code is safe and secure is to get access through an expert." 9/2/2025 Hearing Tr. at 24:3-12.
2  The Court agreed and adopted a TRO that expressly included Li's current devices while making
3  allowance for Li to procure new devices and accounts solely on a *going-forward* basis, provided he
4  did not transfer any information from existing devices and accounts to those new devices and
5  accounts. Li's blanket denial of access to his existing devices merely because privileged material
6  may be present would be inconsistent with this Court's order that xAI be able to verify that Li has not
7  retained any Confidential Information. Li's privilege concerns can be addressed through other means,
8  which the Court already addressed in the TRO when it ordered Li, if he invoked privilege, to "produce
9  the non-privileged information by another means (e.g., conducting third-party forensic imaging of
10 devices which will be produced with redactions)." TRO at 5. Li has thus far failed to do so, despite
11 the deadline for complying with paragraph 1(a) having passed and despite xAI offering a procedure
12 that comported with the Court's order. Declaration of Carson Swope in support of Plaintiff's
13 Memorandum Regarding Defendant Li's Fifth Amendment Objections (Swope Decl.) ¶¶ 2-3, 7.

14 **B.   Paragraph 1(c)**

15 Because xAI has alleged that Li illegally misappropriated Confidential Information, xAI
16 acknowledges that Li identifying all the personal locations, devices, accounts, or storage media where
17 such information is stored could tend to incriminate him. That said, given Li's voluntary production
18 of several devices to xAI, and voluntary admission that he misappropriated specific xAI Confidential
19 Information (*see* Dkt. 7-7 (Applin Decl. Ex.- E) at 3 (identifying specific devices and files); Dkt. 7-9
20 (Applin Decl. Ex. G) (further identifying specific files)), Li should be required to explain how he has
21 not already waived his Fifth Amendment rights with respect to this information. *See Xyngular*, 2013
22 WL 10733830, at *5–6 (finding waiver and ordering production of those materials that were related
23 to the same issue as the previously disclosed documents). Li has failed to demonstrate that the
24 requested information would be further incriminating in light of his voluntary, handwritten admission
25 of misappropriating xAI Confidential Information. *Id.* at *4 (quoting *In re Seper*, 705 F.2d 1499, 1501
26 (9th Cir. 1983)) ("an admission of a criminating fact may waive the privilege as to the details of that
27 fact so long as they do not further incriminate"). To the extent Li can satisfy the Court that he has
28 nevertheless retained a Fifth Amendment privilege, Li should be required to assert it, and xAI should

be entitled to an adverse inference based on that assertion. *See SEC v. Colello*, 139 F. 3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof"); *see also Glanzer*, 232 F. 3d at 1264 ("in civil proceedings adverse inferences can be drawn from a party's invocation of [their] Fifth Amendment right"); *Yu v. ByteDance Inc.*, 759 F. Supp. 3d 992, 999 (N.D. Cal. 2024) ("the district court has discretion to draw an adverse inference from [a party's] assertion [of the privilege against self-incrimination].").

      Plaintiff has proposed as a compromise to replace the bolded language in: "Provide a written statement identifying all personal locations, personal devices, personal accounts, or personal storage media-whether physical or electronic-where **any Confidential Information belonging to xAI is or has been stored, maintained or accessed.**" with "**Li stored, maintained or accessed any data or files.**" Swope Decl. ¶¶ 6, 8. At a meet and confer, Li's counsel contended that this would render paragraph 1(c) duplicative of paragraph 1(a). If, however, Li does not view the proposed revised paragraph 1(c) as any more objectionable than paragraph 1(a), Li should generally have no objection to the proposed revision, as Li's limited objection to paragraph 1(a) focuses not on Fifth Amendment concerns but rather the potential for disclosure of attorney-client privileged communications from his new cell phone and ████ accounts following the commencement of xAI's investigation, as opposed to prior devices or accounts. Moreover, Plaintiff's proposed revision does not merely render paragraph 1(c) duplicative of paragraph 1(a). Paragraphs 1(a) and 1(c) would still require different action, with 1(a) requiring Li to "temporarily surrender control and access" and 1(c) requiring Li to provide a "written statement identifying all personal locations, personal devices, personal accounts, or personal storage media." TRO, ¶¶ 1(a), 1(c). Paragraph 1(a) is further limited to accounts and devices "currently accessible by Li or in Li's possession, custody, or control." This proposed revision to paragraph 1(c) would further encompass locations where Li stored, maintained, or accessed files since beginning his employment with xAI even if Li claims that such account is no longer "currently accessible" (for example, if Li deleted the account before the TRO issued).

**C.     Paragraph 2(a)-(b)**

In this Court's order, the Court noted that "[t]he relief described in Paragraphs 2-4 does not appear to implicate the Fifth Amendment." TRO at 5. Li does not disagree, but notes that Li's counsel cannot determine which devices or accounts to provide (i.e., cannot determine which devices were accessed during Li's employment with xAI), unless Li's counsel can access the devices or accounts, which 2(a) technically prohibits. Plaintiff proposes that the Court allow Li's counsel who have made an appearance in this action to access any devices or accounts not yet turned over to Plaintiff for the limited purpose of determining whether the device or account was accessed on or after the date Li started employment at xAI. Li's counsel has indicated that this would resolve their objection.

**D.     Paragraph 5**

As to Paragraph 5, Li fails to provide any individualized analysis or explanation for his Fifth Amendment assertions in his September 3, 2025 filing. Dkt. 27. Blanket refusals to participate in discovery are improper and insufficient to justify noncompliance.

Li's objections are similar to the defendant's objections in *Commodity Futures Trading Comm'n v. Nawabi*, where the defendant sought to tailor proposed injunctive relief, asserting that it interfered with his Fifth Amendment privilege against self-incrimination. 2022 WL 5186233 at *2. In support of this assertion, that defendant offered "mostly overarching conclusions rather than focused arguments grounded in the circumstances of the case" and "never addrese[d] … whether his compelled production would amount to a tacit concession that certain documents exist, are authentic, and are in his custody or control." *Id.* The court rejected these objections based on the defendant's failure both to provide specific focused arguments tied to the particular discovery requests at issue, and to address whether compelled production would itself be testimonial. *Id.*; *see also Glanzer*, 232 F.3d at 1265 ("[T]he Fifth Amendment's protections against self-incrimination are invoked on a question-by-question basis … the assertion of the privilege necessarily attaches only to the question being asked and the information sought by that particular question."); *Potashnik*, 2008 WL 11339608, at *2 ("The [Fifth Amendment] privilege must be asserted in response to each interrogatory, request for production, or other discovery device.").

Li's blanket objections are equally deficient and cannot serve as a basis to avoid his discovery obligations in their entirety. The Court should require Defendant to review and to respond to each discovery request individually, asserting the Fifth Amendment privilege only where a specific, articulable risk of self-incrimination exists and to explain how that risk continues to persist despite Li's production to xAI of four devices (including all of the information on those devices) that may have been used in connection with the alleged misappropriation.[2] *See* Dkt. 7-10 (Pochron Decl.) at ¶¶ 6-7. To the extent Li later provides particularized objections (for instance, in his September 8, 2025 filing regarding these issues), xAI respectfully requests permission to respond on a request-by-request basis within two business days (i.e., by the end of the day on Wednesday, September 10th).

Li has waived any objection to discovery requests, at least to the extent they are directed to the devices he has already turned over or the specific xAI Confidential Information he has already admitted to possessing (*see* Dkt. 7-7 (Applin Decl. Ex. E) at 3 (identifying specific devices and files); Dkt. 7-9 (Applin Decl. Ex. G) (further identifying specific files)), and he cannot justify any Fifth Amendment objection at least with respect to those specific subjects. This waiver highlights the importance of requiring Li to identify his Fifth Amendment objections with particularity–as the Court already ordered in the TRO, because Li will not be able to justify any Fifth Amendment objection for at least some information, including with respect to the waived subject matter, and thus should be required to provide at least some responses to the discovery requests.

### IV. Third Party Discovery is Crucial Here[3]

Defendant's Fifth Amendment concerns do not apply to the third-party subpoenas xAI seeks to issue. It is axiomatic that "the Fifth Amendment privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him." *Couch v. United States*, 409 U.S. 322, 328 (1973); *see also United States v. Nobles*, 422 U.S. 225, 233 (1975) (citing *Couch*, 409 U.S. at

---

[2] As a note, Defendant Li has indicated that he will appear for deposition but reserves the right to assert his Fifth Amendment privilege against self-incrimination on a question-by-question basis. xAI agrees that this is the proper approach. *See e.g., Rutherford v. PaloVerde Health Care Dist.*, 2014 WL 12633525, at *2 (C.D. Cal. Oct. 23, 2014) ("Regardless of the extent to which [the defendant] may be asked at her deposition for information that may be used in a criminal case against her, she may not assert a blanket Fifth Amendment objection as a basis not to appear for a deposition in this case.").

[3] Plaintiffs address third party discovery in this brief as the Court has indicated that "[a]ny forthcoming order resolving the Fifth Amendment issue will address xAI's request at the September 2 hearing for an early Rule 26 conference." Dkt. 20.

328). "[A] person inculpated by materials sought by a subpoena issued to a third party cannot seek shelter in the Self-Incrimination Clause of the Fifth Amendment." *In re Grand Jury Subpoena (Maltby)*, 800 F.2d 981, 983 (9th Cir. 1986) (citing *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742–43 (1984)). Thus, to the extent xAI seeks discovery from third parties, "[i]nquisitorial pressure or coercion against a potentially accused person, compelling h[im], against h[is] will, to utter self-condemning words or produce incriminating documents is absent." *Couch*, 409 U.S. at 329.

The Supreme Court has considered this exact issue in the context of business records, holding that an individual's Fifth Amendment rights do not extend to their account records maintained by businesses. *Fisher v. U.S.*, 425 U.S. 391, 411 (1976) ("This Court has … time and time again allowed subpoenas against the custodian of corporate documents or those belonging to other collective entities…"). Accordingly, there is no need to delay third-party discovery during the pendency of this Fifth-Amendment litigation, and indeed time is of the essence in ensuring that xAI obtains access to records in the possession of third-parties that will show whether, and to whom, Li has further distributed xAI Confidential Information. For example, many online storage providers may permanently delete files that have been moved to the trash as soon as 30 days later, creating a risk that records Li tried to delete may only be available for a short time before they are lost forever.[4] To not further delay third party discovery, xAI asked Li to provide lawful consent, pursuant to 18 U.S.C. § 2702(b)(3) and 2702(c)(2) of the Stored Communications Act (SCA), authorizing service providers to disclose the contents of Li's accounts responsive to Plaintiffs' discovery requests. Swope Decl. ¶¶ 4-5, Ex. C. xAI respectfully requests that the Court order Li's compliance in providing consent, which is consistent with paragraph 1(e) of the TRO requiring Li to "cooperate and work with xAI … to provide xAI access to such accounts and devices listed in 1(a)." Li did not object to paragraph 1(e) of the TRO, and thus has already consented to providing this cooperation. Further, both California and federal courts recognize that a party's consent may be compelled. *See, e.g., Negro v. Superior Ct.*, 230 Cal. App. 4th 879, 897, (2014), as modified (Nov. 18, 2014) ("courts in a variety of other settings have compelled parties to consent to a third party's disclosure of material where such consent was a

---

[4] *See, e.g.,* ███████████████████████████████████████████

prerequisite to its production"); *accord Al Noaimi v. Zaid*, No. 11-1156-EFM, 2012 WL 4758048, at *3 (D. Kan. Oct. 5, 2012) ("the court has authority under Fed.R.Civ.P. 1, 26(b)(2) and 26(c) to require Nader to execute a consent that satisfies 18 U.S.C. § 2702(b)(3)"); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 614 (E.D. Va. 2008) ("the district court in Mississippi could order the Rigsbys to consent to AOL's disclosing the contents of their e-mails under the pain of sanctions. FED.R.CIV.P. 37"); *Glazer v. Fireman's Fund Ins. Co.*, No. 11 CIV. 4374 PGG FM, 2012 WL 1197167, at *3 (S.D.N.Y. Apr. 5, 2012) ("The Court … may simply direct that she consent to disclosure if the chats are likely to contain information relevant to this case").

## V.     Conclusion

The Court should reject Defendant Li's blanket invocation of the Fifth Amendment as a bar to discovery, require that any assertion of privilege be made on a question-by-question and request-by-request basis and compel compliance with all discovery obligations that do not implicate a real and appreciable risk of self-incrimination. The Court should further require Li to explain why he did not waive his Fifth Amendment privileges when he provided xAI with four different devices that may have been used in connection with the alleged misappropriation. Plaintiff also respectfully requests that the Court should permit xAI to pursue third party discovery without delay, and order Li's consent, ensuring that xAI's rights to protect its trade secrets and Confidential Information are not frustrated by Defendant's refusal to participate in discovery.

Dated:  September 8, 2025                      Winston & Strawn LLP


By: /s/ Kathi Vidal
  KATHI VIDAL
  MATTHEW R. MCCULLOUGH
  M. BRETT JOHNSON
  ALEXANDER H. COTE
  CARSON SWOPE

Attorneys for Plaintiffs X.AI Corp. and X.AI LLC