# EXHIBIT A

| | |
|---|---|
| 1 | BENJAMIN S. KINGSLEY (CSB No. 314192) |
| | bkingsley@fenwick.com |
| 2 | FENWICK & WEST LLP |
| | 555 California Street, 12th Floor |
| 3 | San Francisco, CA 94104 |
| | Telephone:   415.875.2300 |
| 4 | Facsimile:    415.281.1350 |
| 5 | JESSICA M. KAEMPF (WA Bar No. 51666) |
| | jkaempf@fenwick.com |
| 6 | FENWICK & WEST LLP |
| | 401 Union Street, 5th Floor |
| 7 | Seattle, WA 98101 |
| | Telephone:   206.389.4510 |
| 8 | Facsimile:    206.389.4511 |
| 9 | CHRISTIAN E. PICONE (CSB 218275) |
| | ANGELA SHAW (CSB 321726) |
| 10 | BERLINER COHEN, LLP |
| | Ten Almaden Boulevard, |
| 11 | San Jose, California 95113-2233 |
| | Telephone:   408.286.5800 |
| 12 | Facsimile:    408.998.5388 |
| | christian.picone@berliner.com |
| 13 | angela.shaw@berliner.com |
| 14 | Attorneys for Defendant |
| | XUECHEN LI |

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X.AI Corp., a Nevada corporation, and X.AI LLC, a Nevada limited liability company, | Case No.: 3:25-cv-07292-RFL |
| Plaintiffs, | **DEFENDANT XUECHEN LI'S SUR-REPLY TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION AND RESPONSE TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| v. | |
| XUECHEN LI, | |
| Defendant. | Courtroom: Courtroom 15 |
| | Judge: Honorable Rita F. Lin |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    THE COURT SHOULD REJECT XAI'S NEWLY PROPOSED INJUNCTION DIRECTED TO "POTENTIAL" XAI INFORMATION IN APPENDIX A ........................................................................................................ 2

    II.    THE COURT SHOULD REJECT XAI'S NEW ADVERSE INFERENCE ARGUMENT THAT IS UNSUPPORTED BY ANY INDEPENDENT EVIDENCE OF DISLCOSURE, TRANSFER OR COPYING TO THIRD PARTIES ........................................................................................................................ 7

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alphonso Inc. v. Tremor Video, Inc.*,
 No. 22-CV-03629, 2022 WL 17968081 (N.D. Cal. Oct. 31, 2022) .......................................... 6

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
 232 F.3d 1258 (9th Cir. 2000) ............................................................................................ 5, 10

*Laurino v. United States*,
 No. 1:18-CV-00636, 2021 WL 3912254 (E.D. Cal. Sept. 1, 2021) ........................................ 9

*Lehtonen Tr. of PurchasePro.com, Inc. v. Gateway Companies, Inc.*,
 No. 2:04-CV-00625, 2006 WL 8442279 (D. Nev. Aug. 8, 2006) .......................................... 9

*Mattel, Inc. v. MGA Ent., Inc.*,
 782 F. Supp. 2d 911 (C.D. Cal. 2011) .................................................................................... 7

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
 No. 2:12-CV-02554, 2013 WL 12182602 (C.D. Cal. June 14, 2013) .................................. 10

*United States v. $45,357.00 in U.S. Currency*,
 No. CV 15-9989, 2017 WL 11636202 (C.D. Cal. Aug. 1, 2017) ........................................... 9

*Waymo LLC v. Uber Techs., Inc. et al.*,
 No. C 17-00939, 2017 WL 2123560 (N.D. Cal. May 15, 2017) ...................................... 8, 10

*WeRide Corp. v. Kun Huang*,
 379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233,
 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ......................................................................... 3

**STATUTES**

18 U.S.C. § 1839(3) ....................................................................................................................... 3

# INTRODUCTION

xAI's Reply confirms what its own extensive forensic examination made clear: there is no evidence—none—that Dr. Li disclosed, transferred, or copied any xAI trade secrets to any third party. Despite that finding, which demonstrates no risk of irreparable harm, and despite conceding that employment restrictions are unwarranted, xAI nevertheless asks this Court to impose an injunction that would effectively bar Dr. Li from engaging in his profession, by prohibiting him from using his own thoughts, opinions, and ideas, or those generally known in the public domain.

In its Reply, xAI seeks to enjoin use of not only the three ▮' files it initially claimed as trade secrets, but has expanded that scope to scores of additional documents in its Appendix A, which are documents its digital forensics vendor, Nardello, speculatively labeled as "*potential*" xAI material in its review of Dr. Li's personal accounts and devices.[1] As an initial matter, xAI did not have a policy prohibiting the use of personal accounts and devices during Dr. Li's time at the company, and such use was plainly permitted and in some instances encouraged. As a result, the existence of documents relating to xAI within Dr. Li's personal accounts does not support xAI's accusation of misconduct. Moreover, many documents are undisputedly not xAI's confidential information, including notes reflecting Dr. Li's personal thoughts and ideas, publicly available research, and work of other companies, such as OpenAI. Yet xAI seeks an injunction to prevent Dr. Li from using information derived from these materials, again creating a de facto non-compete.

Unable to point to evidence of disclosure or use of xAI trade secrets or confidential information, xAI resorts to a series of arguments that are entirely speculative. First, xAI asks the Court to draw nefarious inferences from the deletion of documents following Dr. Li's receipt of the August 11 letter from xAI—a letter in which xAI *expressly demanded* that Dr. Li "permanently delete" xAI documents and information. Second, xAI claims it is "unable to confirm" whether other downloads or transfers occurred because certain information was deleted—but in doing so, ignores that Nardello forensically examined all four of Dr. Li's personal devices and twelve of his digital accounts, and confirmed through that process that there is no evidence of disclosure or sharing with third parties. Third, it asks the Court to draw sweeping adverse inferences to punish

---

[1] The "Appendix A Documents" include all files listed on Appendix A except the ▮ files.

DEFENDANT'S SUR-REPLY TO PLAINTIFFS'      1     Case No. 3:25-cv-07292-RFL
REQUEST FOR PRELIMINARY INJUNCTION

Dr. Li for asserting his Fifth Amendment rights in the face of a criminal investigation that xAI instigated—without independent evidence of those inferences, as is required under the law, and in fact even though those requested inferences are *contrary* to the evidence in the record. Fourth, and finally, xAI renews its speculation that Dr. Li "could have" fled with xAI's alleged trade secrets. But he did not: instead, he voluntarily handed his devices over to xAI in mid-August and sat for two days of interrogation with xAI's security team. Indeed, as xAI knows, Dr. Li voluntarily provided everything xAI needed to access the key ███ (and likely any other account) in mid-August—including Dr. Li's phone used as his two-factor authentication device. xAI chose not to avail itself of that access when it had the phone. Instead, having run to the FBI to try to enlist the government in its competitive fight with OpenAI, xAI lost access to the phone that Dr. Li had handed to xAI and which xAI knew could be used to access the key ███ account (and again, likely any other account). And even then, Dr. Li continued to cooperate with each and every single one of xAI's requests for account access in this litigation.[2]

Because xAI cannot succeed on the merits with respect to the Appendix A Documents, and because xAI continues to rely on speculation, the Court should deny xAI's request for an injunction.

## ARGUMENT

**I.   THE COURT SHOULD REJECT XAI'S NEWLY PROPOSED INJUNCTION DIRECTED TO "POTENTIAL" XAI INFORMATION IN APPENDIX A**

The Court should reject xAI's new request for an injunction on the Appendix A Documents. These documents comprise files that Nardello, xAI's digital forensic vendor, identified as "potential" xAI information. Nardello is not an artificial intelligence expert, and there is no indication that Nardello had any of the relevant expertise, context, or information about either xAI or Dr. Li's work to know what these documents are. Indeed, in identifying the files that xAI now lists on Appendix A, Nardello merely used "general keywords" as search terms (such as "openai,"

---

[2] As explained in the Opposition, Dr. Li's prior counsel informed xAI on August 19, 2025 that it could access the ███ account by doing a "password reset" using Dr. Li's phone (which was in xAI's possession) to receive a reset code. (Opp. at 5; Decl. of John Hyland (Dkt. 69-29) at ¶¶ 4-5.) xAI inexplicably refused to follow that suggestion at that time. (*Id.*) Yet, ***after*** xAI relinquished Dr. Li's phone to the FBI, and after xAI filed its highly publicized lawsuit, its counsel ultimately proposed the same "password reset" approach (which would no longer readily work, without Dr. Li's phone). (Opp. at 6.) xAI's Reply does not refute these facts or otherwise explain xAI's actions.

DEFENDANT'S SUR-REPLY TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION       2       Case No. 3:25-cv-07292-RFL

"interview," "new hire," "Untitled document," and "2025"), then listed files, stating that they *may* contain *potential* xAI information.[3] These documents have not been reviewed by any expert to confirm they contain actual xAI confidential information, much less xAI trade secrets, and they plainly include non-confidential and personal information of Dr. Li. xAI cannot establish any *Winter* factor favors an injunction on these newly added documents. Further, because the parties have already begun to negotiate a process to analyze the Appendix A Documents (*see* Ex. O at 1-2), the Court should decline to include these documents in any injunction.

***No Likelihood of Success on the Merits Because xAI Cannot Show They Are Trade Secret.*** As a threshold matter, xAI has made no showing that the Appendix A Documents are trade secrets.[4] 18 U.S.C. § 1839(3). Nor can it, as they include Dr. Li's own personal thoughts, opinions, professional expertise, and publicly available research—content that falls clearly outside the scope of protection. As one example, xAI identifies a "Research Collection" page Nardello identified from Dr. Li's ▮▮▮▮ account. (Dkt. 76-15, Appendix A at 3.) That page contains hundreds of examples of publicly available research, much of which was published before Dr. Li joined xAI. (*Compare, e.g.*, Ex. B ▮▮▮▮ page), *with* Ex. C (public document cited in Ex. B at 1).) And the "Personal" page is just as it sounds—personal information directed to, for example, thoughts on clothing and bedding. (*See, e.g.*, Ex. D.) For Dr. Li's ▮▮▮▮ account, xAI lists numerous files— including some that are merely clip art of arrows—with no evidence, nor even a bare explanation, of how xAI believes these are its trade secret or confidential information. (*See, e.g.*, Ex. E.)

xAI also now argues that a file called "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" comprises "***xAI's*** key learnings and design insights" and thus its trade secrets.[5] Again, xAI offers no support for that claim, and in fact Nardello's report describes this document as showing "***Li's*** past work and his

---

[3] *See, e.g.*, Dkt. 76-2 at 3-4 (identifying ▮▮▮▮ documents that "*may* contain" xAI information); Dkt. 76-3 at 4 (identifying ▮▮▮▮ information that "*could* contain potential xAI intellectual property"), Dkt. 76-4 at 2-3 (identifying ▮▮▮▮ data that are "*potential*" xAI information); Dkt. 76-5 at 2 (identifying X chat that is "potential" xAI information); Dkt. 76-6 at 3 (identifying ▮▮▮▮ data that are "*potential*" xAI information).
[4] Respondin▮▮▮▮nt regarding this case law (*see* Reply at 7, n.4), the correct citation is *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ("[T]o obtain a preliminary injunction, a plaintiff must first identify its alleged trade secrets with 'reasonable particularity.'").).
[5] To be clear, this slide deck ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮") is **not** the slide deck xAI alleges was impermissibly downloaded, which is titled ▮▮▮▮ (*See* Dkt. 8-16, Pochron Decl. at ¶ 7.)

FENWICK & WEST LLP
ATTORNEYS AT LAW

learnings." (Dkt. 76-2 at 3.) These learnings were derived from his personal experiences, as well as from publicly available information. For example, among the learnings in the file is "Learning #3" of " ▮▮▮▮▮▮▮▮▮▮ " This learning is not a "key learning and design insight" of xAI, but instead is a publicly known concept that ▮▮▮▮▮▮▮▮▮▮ is derived from former employees of xAI's competitor, OpenAI.[6] (Dkt. 76-13, McCullough Decl. Ex. 12 at 12 (slide citing " ▮▮▮▮▮▮ "); *see also* Ex. F at 29 (showing identical material from publicly available presentation)[7].) As explained on the slide, the learning comes from the principle that ▮▮▮▮▮▮▮▮▮▮ (*id.*)[8]—that is not xAI confidential information. Likewise, "Learning #1" regarding use of " ▮▮▮▮▮▮▮▮▮▮ " (Dkt. 76-13, McCullough Decl. Ex. 12 at 5-7) and "Learning #2" regarding ▮▮▮▮▮▮▮▮▮▮ " (*id.* at 8-10) are concepts that have long been publicly known. (*See, e.g.*, Ex. G at 3-6 (May 2024 paper by Google DeepMind describing benefits of on-policy methods); Ex. H at 1 (February 2024 paper by Google DeepMind and University of Edinburgh describing the online method "outperforms both offline DAP and RLHF methods"); Ex. I at 4 (January 2020 blog by John Schulman, founder of OpenAI and Thinking Machines Lab, encouraging researchers to "keep [] changes simple" for incremental improvements). In sum, not only has xAI offered no evidence that the interview slides are its trade secrets, but it is clear from publicly available information that they reflect general knowledge and experience. The interview slides are not xAI trade secrets.

Nor is it proper to assume Appendix A Documents are xAI's through adverse inference. As an initial matter, a party seeking an adverse inference must show "there is a substantial need for the information[,] there is not another less burdensome way of obtaining that information," and that

---

[6] Counsel for Dr. Li does not believe this information needs to be redacted, but has done so in an abundance of caution, and in light of xAI's contention that this slide deck allegedly contains its confidential information. Should xAI decline to provide a basis for sealing this information, counsel for Dr. Li believes the information in this paragraph should not be redacted.

[7] *See* John Schulman and Barret Zoph's Seminar, "ChatGPT and the Art of Post Training," was presented at Stanford University's Human-Centered Artificial Intelligence (HAI) Seminar on January 28, 2025, available at https://hai.stanford.edu/events/john-schulman-and-barret-zoph-chatgpt-and-the-art-of-post-training (last accessed December 22, 2025).

[8] As Dr. Li further explained, the "first step" is hard because, in his experience, ▮▮▮▮▮▮▮▮▮▮ (Dkt. 76-13 at 13.)

FENWICK & WEST LLP
ATTORNEYS AT LAW

there is "*independent evidence* of the fact being questioned." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264-65 (9th Cir. 2000) (emphasis in original). xAI, with its $230 billion valuation, clearly has the resources and ability to demonstrate that information is its confidential or trade secret information, if it is in fact so—and has chosen to not attempt to do so. Publicly available information contradicts the premise, including for the "███████████████" on which xAI has focused. Moreover, "the Fifth Amendment's protections against self-incrimination are invoked on a question-by-question basis," and "the assertion of the privilege necessarily attaches only to the question being asked and the information sought by that particular question." *Id.* at 1265 (citation omitted). Here, xAI served no discovery request directed to whether the material in Appendix A is in fact trade secret or confidential. An adverse inference on this issue is thus improper.

Thus, xAI has not established the threshold question of whether the Appendix A Documents qualify for protection—particularly where, as explained *supra*, substantial portions are undoubtedly not xAI's property, are publicly available, and/or reflect Dr. Li's own independent expertise.

***No Risk of Irreparable Harm Because No Continued Access, and No Disclosure, Use or Transfer to Third Parties.*** Nor can xAI establish irreparable harm. There is no conceivable harm from Dr. Li's use of his own personal knowledge, skills and experience. (*See supra*.) And, even if xAI could later identify some protectable information among these materials, there still would be no risk of irreparable harm, as xAI has already removed these materials from Dr. Li's access and possession. (*See* Opp. at 13 (citing cases denying injunction request, where former employees returned all information alleged to have been impermissibly downloaded).)

Moreover, the Nardello reports do not offer any evidence of improper use, disclosure, transfer, or copying of these files to third parties, nor does xAI provide any other such evidence. xAI offers its rank speculation that the interview slides were disclosed to OpenAI, but only supports that speculation by noting that "Li arranged to talk with [a] []OpenAI Member of Technical Staff[] on July 13 and various other employees for technical interviews on at least July 21 and July 22." (Reply at 3.) That Dr. Li had discussions with OpenAI is not evidence of disclosure of any presentation, much less xAI trade secrets. Instead, OpenAI has already informed this Court that "[d]iscovery will show unequivocally that this presentation did not happen." (Dkt. 30 at 3.)

Finally, xAI argues that Dr. Li's "possession" of the Appendix A Documents on its own constitutes misappropriation. Even assuming the Appendix A Documents contain *any* xAI trade secrets—which xAI has not established—the "mere possession of trade secrets does not itself establish … improper[] acqui[sition] or use." *See Alphonso Inc. v. Tremor Video, Inc.*, No. 22-CV-03629, 2022 WL 17968081, at *6 (N.D. Cal. Oct. 31, 2022). That Nardello identified these files in Dr. Li's personal accounts, at most, merely highlights that xAI sanctioned the use of such personal accounts for xAI work. xAI's own policies contemplate the use of personal computers and accounts for xAI work (*see* Opp. at 20 (citing Mot., Ex. B at 5, ¶ 8)), and xAI notably does not cite any policy in its Reply that xAI prohibited the use of such accounts and devices.

Indeed, personal accounts and devices were widely used at xAI. Such use was so common that in July 2025, the company was embroiled in a highly public controversy about its efforts to mandate tracking software on employees' *personal* devices that they used for xAI work.[9] And the use of personal accounts and devices was not incidental; it was encouraged—xAI's CEO directed employees to use ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in discussing xAI business. (Ex. J.) And xAI continues to allow its employees to use personal accounts to access the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Such routine use of personal accounts is incompatible with xAI's claim that the presence of materials on personal accounts reflects some kind of nefarious conduct, and underscores the lack of reasonable measures to protect xAI's work.

**The Balance of Equities and Public Interest Weigh Against an Injunction on the Appendix A Materials.** Because the Appendix A materials include Dr. Li's own professional

---

[9] *See* G. Kay, "Elon Musk's xAI pressed employees to install surveillance software on personal laptops," BUSINESS INSIDER (July 13, 2025), *available at* https://www.businessinsider.com/xai-pressed-workers-install-surveillance-software-personal-laptops-2025-7 (last accessed December 22, 2025).

expertise, personal notes, and research that is publicly available, an injunction enjoining derivatives of such information is improper. *See Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 968 (C.D. Cal. 2011) ("[a]n employee may use knowledge from general know-how, skill and experience in later competition with a former employer" (citation modified, brackets omitted).). Importantly, an injunction on such information would effectively prevent Dr. Li from working in his discipline and operate as a de facto restriction on Dr. Li's employment. Such an extraordinary restraint not only harms Dr. Li, but disserves the public in a fast-moving industry like AI, which depends upon employee mobility, innovation, and the free flow of knowledge of highly skilled practitioners.

***An Injunction Covering the Appendix A Documents is Overly Broad and Not Properly Tailored.*** The Court should reject xAI's request to enjoin the use of the Appendix A Documents. xAI argues Dr. Li already "agreed to deletion … during the TRO process" (Reply at 15), but as explained to xAI, Dr. Li agreed to do so simply "to assure xAI that there is no risk of irreparable harm going forward, and to expedite completing the TRO process"—but Dr. Li "did not and could not agree that all files and information that Nardello identified as *potentially* containing xAI confidential information did in fact contain xAI confidential information." [12] (Ex. O at 4 (emphasis in original).) Indeed, these files include public information and Dr. Li's own work, and thus an injunction before the parties have analyzed these files[13] are in fact trade secrets is highly improper.

## II. THE COURT SHOULD REJECT XAI'S NEW ADVERSE INFERENCE ARGUMENT THAT IS UNSUPPORTED BY ANY INDEPENDENT EVIDENCE OF DISLCOSURE, TRANSFER OR COPYING TO THIRD PARTIES

Not only should the Court refuse to enjoin Dr. Li from using the Appendix A Documents, but it should also reject xAI's request for any preliminary injunction as to ▓ files.

As an initial matter, xAI does not dispute that its extensive forensic investigation found ***no evidence*** that Dr. Li disclosed, copied, transferred, or otherwise shared these ▓ files to any third

---

[12] xAI mischaracterizes Dr. Li's arguments when it suggests he seeks to use xAI's trade secrets, so long as they are "intangible." (Reply at 15.) That is wrong. Instead, Dr. Li argues xAI has done nothing to establish that the Appendix A Documents are trade secrets, and in fact they contain, among his personal and general information, knowledge and expertise. He cannot be enjoined from using such information, even if partially gained through the ordinary course of employment.

[13] Again, the parties have already begun to negotiate a procedure for xAI to determine whether any of the Appendix A documents contain any xAI information. (*See* Ex. O at 1-2.) In light of such negotiations, the Court should decline to include the Appendix A documents in any injunction.

party, and that Dr. Li no longer possesses any, even "potential," xAI confidential information. (*See generally* Reply.) The case law establishes that in such circumstances, an injunction is improper. (*See* Opp. at 12-15.) While xAI attempts to distinguish these cases by arguing it still cannot determine "when, where, or how many times Li downloaded the source code" allegedly due to a browser history deletion (*see* Reply at 12), that argument ignores that (1) xAI directed Dr. Li to delete its information in its own August 11 letter; (2) xAI then took possession of the relevant devices, and had the ability to access the ▇▇▇ account if it so choose as of August 19, 2025 but did not do so, and (3) xAI has extensively evaluated all four of Dr. Li's personal devices and twelve of his digital accounts—including each online cloud repository Dr. Li accessed in the relevant time period (i.e., ▇▇▇ and ▇▇▇, as well as various email accounts (*see* Opp. at 6-7)—and found zero evidence of any such downloads. Any remaining argument by xAI is mere speculation, which is not cognizable under the law. (*See* Opp. at 12-15.)

In light of the absence of evidence, xAI resorts to inviting speculation under the guise of an adverse inference. That argument is improper because, as other courts in this district have found, the court may not "fill the gap" that remains after discovery "with adverse inferences." *See Waymo LLC v. Uber Techs., Inc. et al.*, No. C 17-00939, 2017 WL 2123560, at *6 (N.D. Cal. May 15, 2017). Here, xAI asserts that Dr. Li "refus[ed] to provide any discovery" (Reply at 6-7), but that argument ignores that Nardello issued five reports from its extensive forensic review, each indicating there is no evidence of disclosure to third parties.[14] (*See* Dkts. 76-2–6.) xAI cannot now "fill the gap with adverse inferences." *Waymo*, 2017 WL 2123560, at *6.

Moreover, xAI has failed to meet its burden to prove any of the requirements for an adverse inference. (*See supra,* at 4-5.) First, it has not identified, on a question-by-question basis, the specific inferences it seeks based on its discovery requests and instead makes "sweeping requests

---

[14] xAI complains about Dr. Li's ▇▇▇ accounts. (*See* Reply at 4.) But these accounts were readily identifia▇▇▇ sic examination of Dr. Li's devices provided in August, yet xAI neither included them in the TRO nor requested access to them until November. Despite being past the time period the parties had agreed to for recovery (*see* Dkt. 62), Dr. Li agreed to recovery of these accounts, to which xAI has now had full access. Further, Dr. Li's counsel also informed xAI that based on their forensic review, "there are other kinds of apps installed on devices (for example, Steam, messenger/chat apps, etc.) that we know [xAI's counsel] have seen as well and have not sought to recover the associated accounts," and Dr. Li's counsel made clear that Dr. Li is "amenable to facilitating recovery of these accounts." (Ex. P.)

for negative inferences" based on conclusory assertions—an approach courts have deemed improper. *See, e.g.*, *Lehtonen Tr. of PurchasePro.com, Inc. v. Gateway Companies, Inc.*, No. 2:04-CV-00625, 2006 WL 8442279, at *2 (D. Nev. Aug. 8, 2006).

Second, xAI had several less burdensome ways to prove its two speculative theories that Dr. Li transferred xAI trade secrets without leaving any evidence in any of his accounts or devices, or that Dr. Li transferred xAI trade secrets to OpenAI. Again, xAI sent Dr. Li a letter on August 11 demanding that he delete information. Dr. Li then sat for two days of interrogation with xAI's security team and handed over his devices—including his iPhone that could be used to access his accounts, which xAI inexplicably chose not to pursue. (Opp. at 4-5.) To the extent xAI truly believes that any OpenAI employee received xAI information from Dr. Li, xAI has had a less burdensome way to obtain this information, since it rushed the opening of third party discovery on September 12, 2025 on an expedited basis: xAI could have sought personal records or testimony from OpenAI employees who participated in Dr. Li's interview process, or could have diligently pursued its document subpoena as to ▮▮▮▮. Because these less burdensome means exist to obtain the requested information, an adverse inference is improper. *Laurino v. United States*, No. 1:18-CV-00636, 2021 WL 3912254, at *4 (E.D. Cal. Sept. 1, 2021).

Third, not only does xAI offer no independent evidence for the inference it requests that Dr. Li shared the alleged trade secrets with third parties, but the evidence in the record is completely contrary to that notion.[15] *See United States v. $45,357.00 in U.S. Currency*, No. CV 15-9989, 2017 WL 11636202, at *9 (C.D. Cal. Aug. 1, 2017) (no adverse inference supported where independent evidence not shown). Dr. Li voluntarily turned over his devices to xAI in August and since then has been subject to extensive examination of his relevant devices and accounts, and, over four months later, xAI has not found a single shred of evidence that he transferred or used any xAI information after leaving the company. xAI has subpoenaed OpenAI, and OpenAI has not found a single shred of evidence that Dr. Li transferred any xAI information to OpenAI. This is not a case where the record is bare—instead, the record is replete with devices, accounts, and sources of

---

[15] At most, xAI argues that Dr. Li "admitted to breaching his contract," yet Dr. Li made no such admission that it breached by sharing with or disclosing to any third parties (i.e., the adverse inference xAI seeks).

DEFENDANT'S SUR-REPLY TO PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION       9       Case No. 3:25-cv-07292-RFL

evidence that, had Dr. Li actually transferred xAI trade secrets, would have left residue of him having done so. *See Mintz v. Mark Bartelstein & Assocs. Inc.*, No. 2:12-CV-02554, 2013 WL 12182602, at *2 (C.D. Cal. June 14, 2013) ("[o]bjective speciousness exists" where a defendant can "point to the absence of evidence of misappropriation in the record.") (citation modified).).

Finally, the Ninth Circuit is clear: courts must balance the competing interests "in each particular circumstance … of the party asserting the privilege, and the party against whom the privilege is invoked." *Glanzer*, 232 F.3d at 1265. That balance here weighs overwhelmingly against an adverse inference that punishes Dr. Li for trying to protect his Fifth Amendment rights in the face of a criminal proceeding instigated by xAI, despite his extensive cooperation with the forensic investigation. For example, in *Waymo*, the Court declined to infer wrongdoing where (1) the plaintiff had obtained expedited discovery, (2) the plaintiff sought to patch holes in its trade secret theory through inference rather than evidence, and (3) the court retained the option to consider an inference later. *See* 2017 WL 2123560 at *6. All three factors apply here. xAI received, on an expedited basis, unfettered access to Dr. Li's devices and accounts. And after an exhaustive forensic review, its vendor found no evidence of sharing or disclosure to third parties. To the extent any questions remained, xAI could have, but chose not to, diligently pursue third party discovery  An adverse inference cannot substitute for missing evidence. *See id.*

## CONCLUSION

For the foregoing reasons, Dr. Li respectfully requests that the Court deny xAI's request for a preliminary injunction. xAI has failed to meet its burden under the *Winter* Factors to demonstrate entitlement to such extraordinary relief. Nonetheless, Dr. Li has no intention of ever using or disclosing any bona fide xAI trade secrets, and if the Court enters any injunction, it should be narrowly tailored and limited to the files xAI has identified as its trade secrets in its interrogatory responses. (*See* Ex. Q (citing Dkt. 69-23).)[16]

---

[16] The Court should, however, decline to enter an injunction enjoining undefined "trade secrets" or any files in Appendix A that xAI has not established to be its protectable information. As shown in its Reply, xAI has claimed as its "trade secrets" many files that go well beyond any protectable information—encompassing Dr. Li's personal expertise, professional experience, and publicly available research. As xAI's own vendor has explained, even portions of xAI's source code files "appear to be publicly available." (Dkt. 76-2 at 3; *see also* Dkt. 69 at 20.) The Court should thus decline an injunction on these files and on undefined "trade secrets."

Dated: December 23, 2025          FENWICK & WEST LLP

By: */s/ Jessica M. Kaempf*
    Jessica M. Kaempf
    jkaempf@fenwick.com

    Attorneys for Defendant
    XUECHEN LI